**James Franklin FAIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-76-224.**

Court of Criminal Appeals of Oklahoma.

June 28, 1976.

Thomas W. Burns, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, James Franklin Fain, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF-75-856, for the offense of Burglary of a Parking Meter, After Former Conviction of a felony, in violation of 21 O.S.1971, § 1435.

Jury trial being waived, the trial court fixed his punishment at ten (10) years' imprisonment, with the last five (5) years of said sentence being suspended, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Officer Chuck Hodgens, of the Tulsa Police Department, first testified for the State that on April 18, 1975, he observed defendant and one Michael Down standing by a parking meter in the 100 block of East 8th Street in Tulsa, Tulsa County, Oklahoma, with defendant holding a black felt hat against the meter. The witness and Officer Mitch Criner were passengers in an unmarked police unit being driven by Officer Jerry McMillen, and all of the officers were dressed in street clothing. When Officer McMillen momentarily stopped the police unit, the two subjects ran to a car parked nearby and defendant began to drive away slowly. While honking the horn and motioning defendant to stop, Officer McMillen then drove alongside that vehicle and the witness displayed his badge to both subjects. However, defendant then drove away at a high rate of speed and ignored a signal light while being pursued by the officers. As the subjects approached an expressway the officers radioed for assistance, and when defendant drove upon the expressway entrance the witness and Officer McMillen each fired one gunshot at the rear tires of the fleeing vehicle. Defendant continued onto the expressway but then stopped the vehicle shortly, and both subjects had to be removed from the car. A considerable amount of change was observed about the inside of that vehicle in the denomination of pennies, nickels and dimes with perhaps a few quarters. Approximately five to six dollars in change was found in the previously observed hat which was laying on the front seat seat of the car. The subjects were placed under arrest and returned to the location where they were first observed. The six parking meters along that side of the block were in the 8E100 series, and about thirteen pen-

nies were discovered laying around the meters. The parking meter by which the subjects had been standing was intact and later found to contain about $1.50 in change, but the meter immediately next to that one was unlocked.

Jim Owens testified that he was the parking meter foreman in charge of maintenance and collection for all parking meters for the City of Tulsa. In response to a request from the police department on Friday, April 18, 1975, he examined the six parking meters at the location of the alleged offense in the presence of the police officers. Beginning with the meter at which the officers had observed defendant and Michael Down, the serial numbers of the six meters were 8E110, 8E108, 8E106, 8E104, 8E102, and 8E100. All of the meters were locked with the exception of meter number 8E108 which was the meter allegedly burglarized. Only meter numbers 8E110 and 8E100 were found to contain any money and that was in the respective amounts of $1.58 and $1.43. The witness further testified that collections were made from these meters every Wednesday, and an authorized key could not be withdrawn from the locking mechanism without relocking the meters.

Clifford Parsons then testified as the final witness for the State that he was a parking meter collector for the City of Tulsa, and had been collecting money from the meters in the area of the alleged offense for eight years. Although some of these meters were empty when he collected from them two days prior to the alleged offense, he described their usage as good based upon his experience with the meters. He further explained that when the door to the coin compartment is unlocked the money simply falls from the meters.

In support of the supplemental information alleging that defendant was previously convicted of Second Degree Burglary, a certified copy of the judgment and sentence was then introduced without objection.

Insofar as pertinent here, the defense rested upon the testimony of Michael Peter Down that defendant was simply giving him a ride home when they stopped at the location of the alleged offense to check a front tire of the vehicle. As they began to leave he noticed a man waving from another car which then followed them honking, but was unaware that the occupants of that vehicle were police officers until defendant stopped in response to their gunshots. He admitted burglarizing other parking meters elsewhere earlier in the day with a key that he had found, but testified that defendant did not participate in those burglaries nor have any knowledge thereof. He contended that the money discovered by the officers was from those parking meters, and explained that the coins simply spilled from a paper sack as defendant turned onto the expressway. He also claimed ownership of the black felt hat and denied that defendant had at any time had possession of the hat. In an attempt to impeach the credibility of the arresting officers, other testimony was presented in support of the contention that the officers were guilty of police brutality when defendant and this witness were apprehended.

In his sole assignment of error, defendant argues that the evidence connecting him with the commission of the alleged offense was wholly circumstantial and insufficient to sustain the decision of the trial court. In passing upon defendant's Demurrer to the evidence interposed at the close of the State's case in chief, the trial court ruled:

"With regard to the demur [sic] of the defendant, the Court notes and observes in case law the Court must consider the State's evidence in light most favorable to the State. In ruling on the same, apparently there is no direct evidence to the effect that this defendant did break and enter into meter 108 as charged in the information. However, the Court would note and observe that the State may make a prima facie case, circumstantially. In the instant case, the Court

recalls the testimony of witness Chuck Hodgens to the effect that when the defendant was first observed, he was standing by meter 110, the meter next in proximity to the meter in question. That at that time he was holding a black, felt hat. That upon being observed this defendant, with the former co-defendant or co-defendant jumped into a Pontiac which was parked in the same block and contiguous to the meters in question. That they did leave at a high rate of speed and upon apprehension there was recovered from the car a black, felt hat with a substantial quantity of change, primarily: pennies, nickels and dimes. That additional change was recovered from the front seat and floorboard of the car. That there was, thereafter, money recovered from the base of the meters in the immediate proximity of the meter in question, although the testimony was a bit uncertain in that regard. There was further testimony that this Court recalls to the effect that the meter, 108, the meter in question was found to be . . . [unlocked] and empty subsequent to the apprehension of the defendant as well as some three or four other meters [were empty] within the same block. This testimony was further substantiated by witness Jim Owens, the parking meter man. The Court by reason therefore finds and concludes that the defendant's demurrer should be the same and hereby overruled with exception [sic]." (Tr. 60–61)

 Clearly, where circumstantial evidence is relied upon for conviction, the circumstances proved must not only be consistent with each other but inconsistent with any reasonable hypothesis other than the defendant's guilt and a conviction cannot stand where the evidence establishes no more than a mere suspicion of guilt. However, in *Logan v. State*, Okl.Cr., 493 P.2d 842 (1972), we recognized that:

". . . [T]his Court has often held a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative ef-

fect as direct testimony. *Young v. State*, Okl.Cr., 373 P.2d 273. Additionally, circumstantial evidence need not exclude every hypothesis or negate any possibility other than guilt. *Bailey v. United States*, 410 F.2d 1209 (10th Cir. 1969). And finally, it is the exclusive province of the jury to weigh the evidence and determine the facts. *Jones v. State*, Okl.Cr., 468 P.2d 805; and where there is competent evidence from which the jury might reasonably conclude the defendant is guilty, the case will not be reversed on appeal on a contention that the evidence is not sufficient. *Brewer v. State*, Okl.Cr., 452 P.2d 597."

■ In the present case, evidence introduced by the State tended to establish that defendant was present at the place of the offense at or about the time of the commission thereof in possession of the fruits of such a crime and fled when then approached by police officers. While the evidence tending to identify defendant as a guilty party to the alleged offense was circumstantial, we cannot declare this evidence to have been insufficient as a matter of law. See, *Shoemaker v. State*, Okl.Cr., 479 P.2d 621 (1971) and *Campbell v. State*, Okl.Cr., 493 P.2d 1126 (1972). The evidence introduced in defendant's behalf simply presented a question of fact for the exclusive determination of the trial court sitting as trier of fact. We have consistently held that where there is evidence, although entirely circumstantial, from which the defendant may reasonably and logically be found guilty, the weight, credibility and probative effect of such evidence is for the trier of fact, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. See, *Edwards v. State*, Okl.Cr., 508 P.2d 699 (1973) and *Matthews v. State*, Okl.Cr., 530 P.2d 1044 (1975). We therefore hold this assignment of error to be without merit.

For the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, AFFIRMED.

BRETT, P. J., and BLISS, J., concur.