**Richard Lawrence HAGER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–349.**

Court of Criminal Appeals of Oklahoma.

June 24, 1980.

—————

Robert H. Galbraith and Kevin Murphy, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., and Jan Eric Cartwright, Atty. Gen., Ross N. Lillard, III, William S. Flanagan, Asst. Attys. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

In June or July, 1976, the appellant left the Enid, Oklahoma residence he shared with his wife, Mary Hager, and began traveling with Connie Sue Vaughn, whom he had met in Oklahoma City, and Billy Brown, his cousin from Wichita, Kansas. Mary Hager then began having an affair with Tony Corley. About 2:00 a. m. on September 5, 1976, the appellant returned to his Enid residence; and while he was there Tony Corley arrived. The appellant humiliated Corley both verbally and physically. He then forced Corley to accompany him when he left the house. The pair went to Perry, Oklahoma, where the appellant had previously rented a motel room with Connie Sue Vaughn and Billy Brown. Later the same day, the appellant and Billy Brown took Corley out in the country, where Hager shot Corley seven times.

The appellant was subsequently charged with Murder in the First Degree in the District Court of Kay County, Case No. CRF–76–196. Two special prosecutors from the Attorney General's Office were appointed to prosecute this case. Because the conviction for Murder in the First Degree and sentence of death must be reversed, we will discuss only relevant assignments of error. The appellant's complaints that a continuance was improperly denied and his challenge to a specific juror are now moot.

### I

One alleged error relates to the State's extensive questioning of two witnesses concerning the appellant's activities in the days preceding the homicide. Connie Sue Vaughn testified to the appellant's cross-country travels some two months prior to the murder; Mary Hager testified to the abuse she suffered at the appellant's hands one day before the murder.[1] The appellant sought to prevent such questioning by filing a motion in limine and by repeated objections during the trial.

The State falls just short of conceding that the challenged evidence was immaterial (". . . obviously not critical to proof of the instant case." [State's brief, page 32]), but maintains that it was admissible as an exception to the rule barring evidence of other crimes or as part of the res gestae and to shed light on the appellant's motive for the homicide. Neither argument is persuasive when the nature of the evidence is considered.

More than half of Connie Sue Vaughn's direct testimony served only to establish the appellant's lifestyle as a drifter. She detailed her travels with the appellant and Billy Brown through Oklahoma and Kansas from the end of June until the day of their arrest in mid-September. The State claims this testimony was admissible for several reasons:

1. The appellant had the murder weapon with him all through this period;
2. At one point during the travels the appellant rented the car which he was later to use in driving back and forth between Enid and Perry;
3. Connie Sue Vaughn's testimony corroborated the testimony of Mary Hager that the appellant was away from home throughout July and August, when Mary Hager was having an affair with Tony Corley;
4. Telling of the travels showed the appellant's familiarity with the region in which the murder took place;
5. The group went to Wichita, Kansas, during their travels and again after the homicide.

■ An extensive discussion is not required to show the fallacy of these argu-

1. Mary Hager's testimony reflects that the appellant returned home in the early morning hours one day prior to the homicide. He took his wife to the backyard of their home, drew a gun, cooked the hammer, and pointed it between her eyes. The witness further related that the appellant drew a seven inch long knife and threw it at her while she was lying on the ground.

ments. It is irrelevant that the appellant had the murder weapon two months before the murder. There was eyewitness testimony which established that the appellant had the pistol on the day on the crime and did in fact use it to kill Tony Corley. A single question could have established that the appellant purchased the weapon in Oklahoma City.[2] Similar reasoning applies to the rental of the car and the appellant's absence from home. The arguments regarding the appellant's familiarity with the region when he was unable to take officers directly to the location of the body, but had to hunt for it, and the trip to Wichita, are spurious. Nor is there merit to the State's claim that the appellant's travels are part of the res gestae of the murder. They are too far removed in time, place and subject matter.

▪ The State also sought to prove an alleged association between the appellant and organized crime, but only showed that he wandered over a two-state area and made some telephone calls. It is argued that this was circumstantial evidence of the appellant's organized crime connection, but the fallacy of the State's argument is clear. The rule is well settled that, where circumstantial evidence is relied upon for conviction, the circumstances proved must not only be consistent with each other but inconsistent with any reasonable hypothesis other than the defendant's guilt. And a conviction cannot stand where the evidence establishes no more than a mere suspicion of guilt. *Fain v. State*, Okl.Cr., 551 P.2d 1140 (1976).[3] In this case, an association with organized crime is not the only reasonable hypothesis that can be drawn from the fact that the appellant traveled and used the telephone. The State's argument must fail.

▪ The contested portion of Mary Hager's testimony cannot be challenged on appeal. As previously noted, the appellant sought to block this testimony with a mo-

tion in limine, but except for her identification of specific items of evidence, he failed to object to any of the testimony by his wife which he now challenges. Because of this failure, the alleged error was not properly preserved for review. *Teegarden v. State*, Okl.Cr., 563 P.2d 660 (1977).

While Mary Hager's testimony cannot be challenged on appeal, Connie Sue Vaughn's can. The appellant's objections were improperly overruled, and her testimony should not have been admitted.

## II

▪ The appellant argues that the trial court erred in admitting certain photographs into evidence over the appellant's objections. Upon a careful review of these photographs, we conclude that but for the photograph depicting the appellant's belt engraved with the name "Tony," none of the photographs had probative value and were highly prejudicial. In case of retrial, these photographs should not be admitted. See *Deason v. State*, Okl.Cr., 576 P.2d 778 (1978); *Oxendine v. State*, Okl.Cr., 335 P.2d 940 (1958).

## III

In another assignment of error, the appellant complains of an evidentiary harpoon. The witness was a highway patrol officer with 11 years' experience. When the prosecutor asked him if the appellant had been advised of his rights the officer responded, "Well, this was after we had gone to the location of the body *and when we were looking for the other body*," (Emphasis added). The State maintains that the officer's remarks did not directly implicate the appellant. Certainly, by reasonable inference this testimony injected some evidence of another crime. This implies that the single series of events had resulted in more than one death; and the jury might naturally think that if the appellant had

2. As a matter of fact, Connie Sue Vaughn testified that the appellant carried a pistol, but never identified the murder weapon.

3. Circumstantial evidence does not have to negate *every* possibility except that of guilt—

*Logan v. State*, Okl.Cr., 493 P.2d 842 (1972), but it does have to negate every reasonable possibility except that of guilt—*Fain v. State*, Okl.Cr., 551 P.2d 1140 (1976).

done the one killing he must have done the other one, too.

Here again, the State concedes this comment was error—there was no other body—but asserts the trial court's admonishment cured this error.

 It has long been the rule in Oklahoma that police officers should not, while on the witness stand, make voluntary statements prejudicial to the rights of a defendant indicating other crimes. *Mathis v. State*, Okl.Cr., 553 P.2d 525 (1976); *Sandersfield v. State*, Okl.Cr., 461 P.2d 1019 (1969). This Court has repeatedly condemned and chastised similar practices by experienced police officers which were calculated to prejudice the jury. We hold that this evidentiary harpoon was error.

## IV

Billy Brown's testimony reflects that he and the appellant went to the appellant's home in Enid several days before the murder. They did not go directly to the house, but drove around the block looking for police cars and then parked two houses away. Over the appellant's objection, the prosecutor was permitted to ask why they were looking for police cars. Billy Brown responded that "they had a Federal, because of something he had done in the Army, that he—." Although the jury was admonished and the appellant's objection sustained, his motion for a mistrial was overruled. He now urges that the jury was prejudiced against him by this evidence that he had committed some previous crime.

Here, too, the State concedes that error was committed, but urges that the error was not serious enough to require modification or reversal. It contends that the challenged testimony does not explicitly show that the appellant had committed some crime, but that at most the testimony "refers to some difficulties which defendant may have had during his military service."

 However, the rule barring evidence of other crimes—see, for instance, *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977) —is intended to avert the possibility that jurors will be prejudiced by immaterial evidence. That is exactly the type of situation which arose in the present case. While it is true that the witness did not name a specific crime he did succeed in letting the jury know that the appellant was a "wanted man."

## V

The appellant also attacks the special prosecutors' closing arguments. While the State argues that the appellant made no objections to the prosecutor's remarks, the appellant urges that some comments are so flagrant that a failure to object should not preclude review, citing *Lewis v. State*, Okl. Cr., 569 P.2d 486 (1977). In *Lewis* the prosecutor repeatedly made improper statements; the defense attorney objected to some comments, but let others pass without objection. The Court held that the combined effect of all the comments necessitated reversal.

In this case, there were few objections, but many improper remarks. From a careful reading of the closing arguments, one can only conclude that the prosecuting attorneys intentionally set their arguments on an emotional level in order to insure a conviction and a sentence of death.

 For instance, the two special prosecutors repeatedly went outside the record. One prosecutor referred the jurors to their "common knowledge" of the kidnapping of the District Attorney's son when no evidence of the kidnapping had been presented during the trial. The deterrent value of the death penalty was stressed. That amounts to commenting on the crime rate, which is something this Court has repeatedly disallowed. See *Coker v. State*, 26 Okl.Cr. 230, 223 P. 711 (1924); *Jones v. State*, Okl.Cr., 554 P.2d 830 (1976); *Coats v. State*, Okl.Cr., 589 P.2d 693 (1978). One prosecutor hinted that the appellant had committed other crimes than the one for which he was on trial:

> ". . . Counsel said if he had committed criminal acts, we would have presented it to you. We certainly would have, and I admit that he has not been caught and convicted of any previous criminal acts, and you can draw what inference

**1374**

you want to from that evidence—from the statements by counsel. That's right; ____ I could not present to you any acts involving violence that he had been convicted of to you, but, of course, he has to be caught and convicted before I could present that to you. . . ."

The special prosecutor also made the same type of implication about the appellant's only second stage witness, although there was nothing in the record to support it:

"I submit to you, Ladies and Gentlemen of the Jury, Bruce Lowrance is not as clean as they would pretend he would be. You can make an inference from that."

In addition, he compared the jurors to veterans of World War I and World War II, who had an unpleasant duty to do, but did it, and he discoursed at length on how "this is the greatest country and the greatest nation on earth," and on the workings of the American system of government.

Other arguments, although based on the record, could only have been aimed at the jurors' emotions. In the first stage, where the only question was that of guilt, one prosecutor talked about an incident in which the appellant had kicked a goose in the head; and he said that the appellant was a snake whose head should be cut off. In the second stage, one prosecutor told the jury that if they did not sentence the appellant to death, they "could well be giving the kiss of death to some person who is already listed in this information." (Cf. *Lime v. State*, Okl.Cr., 479 P.2d 608 [1971].) This prosecutor also reminded the jury how, even though the victim was already dead, muscle spasms had caused the body to jerk and twitch enough to turn it over.

The State argues that all of the prosecutors' comments were within the acceptable limits of the liberal freedom of speech allowed in closing argument. We cannot agree. None of the argumentation discussed above pertains to any of the issues which the jury was asked to decide and was improperly allowed.

## VI

One other matter relating to the conduct of the prosecutors merits comment. During his incarceration pending trial, the appellant tried to arrange an escape. Several plans were conceived, and kidnap threats were made against various law enforcement officers. The son of the District Attorney was kidnapped, but he was returned unharmed. When the trial began, the special prosecutors were justifiably concerned that some act of violence might be attempted, and as a result three armed law officers were positioned near the defense table. Also, one prosecutor made an improper remark about security in the hearing of the prospective jurors, but the trial court admonished them to disregard it. The State concedes that error occurred, but argues that the trial court's admonishment cured the error. While this may or may not be true, we trust that the incidents will not recur on retrial.

Most of the errors occurring throughout the trial resulted from the admission of improper evidence or were due to the trial tactics employed by the two special prosecutors. We therefore find the appellant was denied a fair and impartial trial.

Therefore, we *REVERSE* and *REMAND* this case to the District Court for a new trial.

BRETT, J., concurs.

BUSSEY, J., concurs in results.