Joe Charles AVANTS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–334.

Court of Criminal Appeals of Oklahoma.

Nov. 4, 1975.

Rehearing Denied Jan. 14, 1976.

John D. Harris, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

OPINION

BLISS, Judge:

Appellant, Joe Charles Avants, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–1099, for the offense of Unlawful Possession of Marihuana, Second Offense, in violation of 63 O.S.1971, § 2–402, ¶ B2. His punishment was fixed at a term of five (5) years' imprisonment and from said judgment and sentence, defendant now perfects an appeal to this Court.

Prior to the commencement of trial in open court, the defendant, in the presence of his attorney, waived the right to have his trial in a two stage proceeding and thereafter proceeded to have the trial conducted in one stage.

The State's first witness at trial was Jack Sherl who testified he was a police officer in the Patrol Division of the Tulsa Police Department and that he was so employed on the 14th day of May, 1974, at which time he had occasion to be in the vicinity of Baker's Restaurant located at 229 West 11th Street in Tulsa, Oklahoma. He testified that while patrolling said area and while travelling eastward on 11th Street at approximately 3:55 a. m., he observed a man staggering alongside a black over yellow 1966 Continental which was parked in

the west parking lot of the restaurant. He further stated that he observed the man stagger to the trunk region of the car at which time the witness pulled his patrol unit into the parking lot. He made inquiry of the man asking him if he was all right and he at that time observed the man to have a strong odor of alcoholic beverage about his person. He identified in court the defendant as the man he had approached on the 14th of May. He further testified that he requested the defendant's identification and that the defendant responded "If you want my identification, it's in my front pocket. Get it." (Tr. 15) He further stated that he pulled the defendant's sport coat open, reached inside the inside pocket and removed a small capsule and some cigarette papers. The substance inside the capsule appeared to him to be marihuana and he thus placed the defendant under arrest for possession of marihuana. He then summoned other officers for assistance and thereafter the defendant was transported to the police station. While being taken to the police station the defendant was questioned as to prior convictions and he responded that he had, in fact, been sent to the penitentiary. Upon being shown State's Exhibit No. 1, a capsule, he identified same as the capsule which had been taken from the defendant on May 14 and he observed the initials he had placed on the capsule that evening. Upon being shown State's Exhibit No. 2, cigarette papers, he testified that the same were the cigarette papers which had been taken from the defendant on that same evening. Lastly, he testified that after taking the items from the defendant he took those items to the property closet and received a receipt, numbered F–5662, for them.

Ken Williamson testified that he was a forensic chemist for the Tulsa Police Department and upon being shown State's Exhibit No. 1 he testified that he picked up that exhibit under property number F–5662 and thereafter performed laboratory tests on the substance contained in the capsule. He stated that after performing a microscopic examination and a modified Duquenois Levine test he believed the substance to be marihuana.

At this time the parties by agreement introduced State's Exhibit Nos. 3 and 4, which were judgments and sentences upon pleas of guilty in case No. CRF–71–1850 for the offense of unlawful delivery of controlled drug and in case No. CRF–71–1866 for the offense of unlawful delivery of controlled drug, respectively. The parties stipulated that if the District Court Clerk of Tulsa County were called to testify he would testify that State's Exhibit Nos. 3 and 4 were true and correct copies showing that Joe Charles Avants was convicted in said cases in the District Court, Tulsa County, for said felonies, and that the defendant in court was the defendant in said felony convictions. The stipulation was also made that the defendant was represented by counsel in said convictions and that said convictions were final.

The defendant took the stand to testify in his own behalf and stated that he lived in Tulsa and was employed at the Candlewood Club as executive chef. He admitted prior convictions including armed robbery, 1950; possession of marihuana, 1961; possession of firearms, after former conviction of a felony, 1965; and, delivery of controlled drugs, 1971. He testified that after getting off work on May 14, 1974, he went to have a beer with some friends at the Gay Nineties Restaurant which is across the street from Baker's Restaurant. He stated after having one beer he took some friends to a bar and thereafter returned them to 11th Street and Denver and then proceeded home. He testified that he had nothing else to drink that night. While at home that evening, he received a call from Jerry McMillan who told him that something had been left in the back seat of his car and requested that he bring this to Baker's Restaurant. He decided to go to Baker's and thereafter have breakfast with Beatrice Meadows, the manager of the motel across the street from Baker's

Restaurant. Upon arriving at Baker's he got out of his car and an officer in a patrol unit drove up at a fast rate of speed. He stated he was walking around the car while reaching in his back pocket to get a comb when the officer jumped out of the patrol unit and stated "Stand right there. Stand there or you're almost a dead man." The officer then asked for his driver's license and he told the officer it was in his front pocket. The officer searched his coat and found the capsule which the defendant had found in the back seat of his car. The officer then arrested him. He testified that at no time was he staggering, and upon being shown State's Exhibit No. 1 he testified that it did not appear to be the capsule which he had had in his pocket on that evening. He further denied having the odor of alcohol about his person or having the cigarette papers which were admitted into evidence as State's Exhibit No. 2.

Defendant's first assignment of error asserts the trial court erred in allowing the trial to proceed in a one stage proceeding thereby placing the defendant's character and reputation in issue from the onset. In support of this contention the defendant cites *Lovell v. State,* Okl.Cr., 455 P.2d 735; *Harris v. State,* Okl.Cr., 369 P.2d 187; and, *Avants v. State,* Okl.Cr., 432 P.2d 932.

We note the record affirmatively reflects that prior to commencement to trial and in open court the defendant, in the presence of his attorney and the court, waived his right to have trial in two stages.[1]

We further note this Court's language in *Jones v. State,* Okl.Cr., 527 P.2d 169 (1974), wherein is stated:

". . . This Court has previously held that it is within the trial court's discretion to allow defendant to waive bifurcated proceedings and try in one stage an offense charged after former

convictions of a felony. *Wilmeth v. State,* Okl.Cr., 520 P.2d 699 (1974). We note that defense counsel has submitted the case of *Carney v. State,* Okl.Cr., 406 P.2d 1003 (1965) suggesting the language in that case holds that a second stage of trial proceedings cannot be waived. It has been this Court's past construction of 22 O.S.1971, § 860, that within the sound discretion of the trial court such a procedure may be waived by defense counsel. Considering the fact that it was instrumental to the defense for defendants to testify in their own behalf controverting certain portions of the testimony of the prosecutrix, we find the trial court did not abuse its discretion in permitting a waiver in light of the fact two defendants had prior convictions which were admissible on cross-examination and defendants consequently were not prejudiced by such a waiver. Therefore, we find this proposition to be without merit." (at page 173)

We observe that the defendant made known to the trial court, and the record so reflects that he had to testify to explain his position and therefore in light of *Jones,* supra, and the waiver reflected in the record we are compelled to find that the defendant was not prejudiced in any manner. Therefore we find the defendant's first assignment of error to be without merit.

The defendant's second assignment of error asserts the trial court erred in overruling the defendant's motion to suppress. The defendant argues that the arrest in the instant case was merely a subterfuge for the subsequent search and, therefore, violative of this Court's opinions in *Bagwell v. State,* Okl.Cr., 327 P.2d 479; *Shirey v. State,* Okl.Cr., 321 P.2d 981, and, *Catron v. City of Ponca City,* Okl.Cr., 340 P.2d 504.

We first note that in Oklahoma a police officer has the power to arrest a person without a warrant for a public of-

---

1. "THE COURT: Let the record reflect that the defendant has waived, in the presence of his attorney and the Court, his right to have this trial in two stages and waives where it can be conducted in one stage, and the State agrees to."

fense when committed or attempted in his presence as provided in 22 O.S.1971, § 196.[2]

The State urges the facts in the instant case are analogous to the case of *Riddle v. State,* Okl.Cr., 506 P.2d 1405 (1973), wherein it states:

> "Under the facts of the instant case, we believe there was reasonable cause for the police officer to conclude the defendant was drunk in a public place and arrest defendant for this offense. Therefore the search incident to this arrest was lawful."

 In the instant case the police officer testified that he observed the defendant staggering and also at that time observed an odor of alcoholic beverage about the defendant's person. We feel, therefore, under the facts and circumstances the officer had probable cause to believe the offense of public drunk was being committed in his presence, and thus the search incident to the arrest was lawful. Therefore all evidence revealed by said search was admissible at trial and the trial court properly overruled the defendant's motion to suppress. For the reasons herein stated we find the defendant's second assignment of error to be without merit.

 Defendant's third assignment of error asserts the trial court erred in assessing and in declaring the judgment and rendering the punishment in this case. The defendant urges this is reflected in the transcript as follows:

"THE COURT: Yes.

"[Whereupon the jury entered the courtroom at 5:15 P.M., and the following ensued:]

"THE COURT: The record may reflect that the jury has returned into court.

"Ladies and gentlemen of the jury, the Court has received a—two notes from the jury. The second one states: 'What happens if we find the defendant guilty but cannot agree upon a sentence. Vote eleven to one.'

"Now, let me ask you this, I'll ask you two questions:

"First of all, have you reached the verdict as to the guilt or innocence of the defendant?

"THE FOREMAN: Yes, we have.

"THE COURT: And who is the foreman? Mr. Sawyer?

"THE FOREMAN: Yes, sir.

"THE COURT: You are the foreman and you have reached a verdict as to the guilt of the defendant?

"THE FOREMAN: Yes, sir.

"THE COURT: But I take it you cannot agree upon a verdict; is that correct?

"THE FOREMAN: Not yet, sir.

"THE COURT: All right. Let me—I mean on a sentence.

"THE FOREMAN: Sentence, yes, sir.

"THE COURT: Do you feel that the jury cannot set the sentence and would like for the Court to set the punishment?

"A JUROR: Yes, sir.

"THE FOREMAN: Well, we haven't arrived at an agreement yet. We could hammer it out a little bit longer, but if it's in the province of the Court to do that, it might be the thing to do. We didn't want to shirk our responsibility." (Tr. 90–91)

The defendant urges that this portion of the record evidences that the jury was far from being hopelessly unable to set the punishment in the case, and that the jury

---

2. "A peace officer may, without a warrant, arrest a person:
1. For a public offense, committed or attempted in his presence.
2. When the person arrested has committed a felony, although not in his presence.

3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.
4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

was actually desirous of completing their duty. However, we note the record further reflects the following:

"THE COURT: I appreciate that, and I appreciate the deliberations that the jury has given.

"I'm going to let you return to the jury room, and if you tell the Court that you've—can reach a verdict of guilty but cannot agree upon sentence, you may so indicate on your verdict and the foreman may sign it. And if you all agree that you've reached a verdict but you do not —you want the Court to set the punishment or if you want to set the punishment, you may. So I'll let you return to the jury room, and when you've reached a verdict you may knock on the door and we will—

"When you come back bring the Instructions and the verdict form and the exhibits.

"[Whereupon at 5:17 P.M. the jury again retired to the jury room.]

"THE COURT: I'll put the last note from the jury into the record if—here you are.

"Court's in recess.

"[Whereupon court was in recess, after which the following ensued:]

"THE COURT: Bring the jury back in, please, Mrs. Turner.

"[The jury returned to the courtroom at 5:25 P.M., and the following ensued:]

"THE COURT: The record may reflect that the State's Attorney is present. The defendant is present with his attorney, and the jury has returned into the courtroom.

"Ladies and gentlemen of the jury, have you reached a verdict?

"THE FOREMAN: We have, Your Honor.

"THE COURT: All right. If you would hand the verdict and the Instructions to the Bailiff, please.

" 'State of Oklahoma versus Joe Charles Avants. We, the jury, drawn, empaneled and sworn in the above styled cause do upon our oaths find the defendant guilty of possession of marijuana, second offense, as charged in the Information herein and fix his punishment', which is left blank and there's a statement: 'The jury members request sentencing be fixed by Judge Beasley. M. L. Sawyer.'

"Is that—

"THE FOREMAN: W. B.

"THE COURT: All right. I knew the last name.

" 'Sawyer, foreman.'

"Now, is that your verdict, ladies and gentlemen? You're asking the Court to fix the punishment?

"Do either of the attorneys desire—

"MR. HAMPTON: We waive examination of it.

"THE COURT: All right. Ladies and gentlemen of the jury, I want to thank you for the attention and consideration that you have given this important case, and I appreciate the fact that you tried to reach a verdict and you did reach one as to the guilt but you could not fix the punishment. And that's what juries are for. Sometimes they agree on everything, and sometimes they don't. And I hope nobody takes offense that you couldn't fix a punishment. I appreciate the fact that you tried. And if you couldn't in good conscience all agree, then that's what you're supposed to do because you're not supposed to just give in because eleven people say to or ten to. Sometimes you can and sometimes you can't. And I respect you all for that.

"And so you will be excused until in the morning. I was hoping that you wouldn't have to come back. Sometimes you don't have to come back on the last day, but they said they need you here tomorrow, and so report back at 9:00 o'clock in the morning to the jury room." (Tr. 91–93)

In *Shanahan v. State,* Okl.Cr., 354 P.2d 780 (1960), this Court stated:

"Sec. 927 of Title 22, supra, would not be applicable and would not apply until after the jury had retired to deliberate and reached a verdict of guilty. Then, and in that event, after diligent and sincere efforts, they are unable to agree upon the punishment and so report to the trial judge, then Sec. 927, Title 22, supra, becomes applicable and the court shall require the jury to deliberate further after giving the additional instruction that if they then fail to agree they may so state in their verdict and leave the punishment to be assessed by the court. This procedure was approved by this court in the case of *Snider v. State,* 71 Okl.Cr. 98, 108 P.2d 552, and we hereby adopt said procedure as that to be followed by the trial courts in all cases where defendant makes his request as provided for in Sec. 926, Title 22, supra."

We feel the trial judge, in the instant case, properly adhered to the guidelines in 22 O.S. 1971, § 927, as so construed by case law.[3] Therefore we find the defendant's third assignment of error to be without merit.

Defendant's fourth assignment of error asserts that this cause should be reversed and remanded for a new trial because the appearance docket reveals that the verdict and instructions in the cause were lost while these documents were under the care and custody of the court clerk of Tulsa County, and thereafter only a substitute verdict and instructions were submitted to this Court as part of the record on appeal. The defendant cites *Bailey v. United States,* 3 Okl.Cr. 175, 104 P. 917, and *Thurman v. State,* 78 Okl.Cr. 98, 144 P.2d 125, which essentially held that where the record necessary for review is lost or destroyed without fault of the accused and without possibility of substitution, a new trial will be granted.

The State urges that these cases are distinguishable in that the case-made in said cases was lost and no possibility for substitution existed. The State urges, and we agree, that the verdict and jury instructions were ably substituted in the instant case, and for this reason we find no error has occurred. We find the defendant's final assignment of error to be without merit.

In conclusion, we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is, accordingly, *affirmed.*

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.

---

3. Further, the record does not reflect any objection to the procedure followed by the trial judge.