Robert GOFORTH, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–80–427.

Court of Criminal Appeals of Oklahoma.

April 20, 1982.

Frank Greer, Miami, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Crim. Appellate Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Robert Goforth, was tried and convicted in Ottawa County District Court, for Murder in the First Degree. Punishment was set at life imprisonment. His co-defendant, Larry Smith, was sentenced to death in a separate trial.

On September 6, 1977, John Frazier discovered a burned pickup camper near a chat pile approximately two miles north of Picher, Oklahoma. Frazier approached the pickup to investigate and discovered in the rear of the camper, what appeared to be the charred remains of a human body. The police were summoned to the scene and an investigation ensued. When questioned by police, the appellant admitted that he and Larry Smith had beaten Willard Denning unconscious, placed him in the rear of the camper, and that Smith had set fire to the vehicle.

The appellant's assignments of error on appeal are five-fold. First, he asserts that the Ottawa County District Court did not have jurisdiction over this offense since it occurred in Indian country. Second, the appellant urges that he was improperly denied a psychiatrist and an investigator at state expense. Third, he argues that the district court erred in failing to conduct a hearing at trial concerning the admissibility of his confession. Fourth, the appellant contends that his demurrer to the State's evidence should have been sustained since the corpus delicti was not proved independent of his confession. Finally, he urges that an accumulation of errors occurring at trial warrants a reversal.

I

The appellant predicates his challenge to the district court's jurisdiction upon 18 U.S.C.A. §§ 1152 and 1153, and Article I, Section 3 of the Oklahoma Constitution. These provisions, he argues, prohibit the district court from assuming jurisdiction over any offense committed within Indian country. Although §§ 1152 and 1153 provide a broad assertion of federal jurisdiction

over crimes committed upon Indian lands, the preemption of state jurisdiction is not total. Thus, in *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1882), the Supreme Court noted that federal jurisdiction over offenses committed within the Indian country does not extend to crimes committed by a white man against a white man. Recently, the Supreme Court reiterated this statement in *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) noting that:

> Despite [§ 1152's] broad language, it does not apply to crimes committed by non-Indians against non-Indians, *which are subject to state jurisdiction.* 435 U.S. at 324, 98 S.Ct. at 1087, 55 L.Ed.2d at 314, n.21 (emphasis added) (citations omitted).[1]

Therefore, fundamental to the appellant's claim that state jurisdiction was preempted by federal statute is a determination of whether appellant is an Indian.

■ Two elements must be satisfied before it can be found that the appellant is an Indian under federal law. Initially, it must appear that he has a significant percentage of Indian blood. Secondly, the appellant must be recognized as an Indian either by the federal government or by some tribe or society of Indians. *United States v. Rogers*, 45 U.S. (4 How.) 567, 11 L.Ed. 1105 (1846). *See also, United States v. Dodge*, 538 F.2d 770, 786 (8th Cir. 1976); *Makah Indian Tribe v. Clallam County*, 73 Wash.2d 667, 440 P.2d 442 (1968); *F. Cohen, Handbook of Federal Indian Law* 2 (1942).

■ In the instant case, the appellant failed to establish his status as an Indian under federal law. The first element of this two-prong test was satisfied by the testimony of the appellant's parents to the effect that the appellant was slightly less than one-quarter Cherokee Indian. *See, United States v. Dodge*, supra; *Sully v. United States*, 195 F. 113 (8th Cir. 1912). The record is devoid, however, of any evidence tending to show that the appellant was recognized as an Indian. Absent such recognition, we cannot hold that the appellant is an Indian under federal law, since such a determination at this point would allow the appellant to assert Indian heritage only when necessary to evade a state criminal action. Accordingly, since the appellant is not an Indian for purposes of 18 U.S.C.A. §§ 1152 and 1153, state jurisdiction is not preempted by those statutes.

■ Likewise, Okla.Const. art. I, § 3,[2] did not deprive the district court of jurisdiction over this criminal proceeding. In *Currey v. Corporation Commission*, 617 P.2d 177 (Okl. 1979), the Oklahoma Supreme Court indicated that section 3 was meant to disclaim jurisdiction over Indian lands only to the extent that the federal government claimed jurisdiction. Thus, where federal law does not purport to confer jurisdiction on the United States courts, the Oklahoma Constitution does not deprive Oklahoma courts from obtaining jurisdiction over the matter.

The soundness of our Supreme Court's construction of section 3 is readily apparent in the instant case. As noted above, the appellant is not an Indian under federal law. Therefore, under longstanding principles of federal law, no jurisdiction was conferred on the federal courts to preside over this offense. *United States v. McBratney*, supra. However, assuming that the murder in this case occurred in Indian country, a restrictive reading of the Oklahoma constitution would deny jurisdiction to the state

---

1. Although the *Wheeler* court did not discuss the applicability of 18 U.S.C.A., § 1153 to offenses committed by a non-Indian, we note the disclaimer of federal jurisdiction over such offenses is far more explicit in that statute which begins:

> Any Indian who commits against the person or property of another Indian or other person any of the following offenses . . .

2. Okla.Const. art. I, § 3 provides in part:

> The people inhabiting the State do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States.

courts. Thus, the appellant's commission of murder within the boundaries of the state of Oklahoma would go completely unpunished. We doubt that this was the result intended by the people of Oklahoma in enacting Okla.Const. art. I, § 3. Accordingly, we adhere to our Supreme Court's construction of that constitutional provision and hold that in the absence of a federal provision vesting jurisdiction in the United States courts over a criminal matter, Okla. Const. art. I, § 3 will not be read to prohibit state jurisdiction.

## II

■ The appellant next contends that the trial court erred in declining to provide him with a court-funded investigator and psychiatrist. We have noted on several occasions that Oklahoma courts are without authority to provide indigent defendants with a court-appointed psychiatrist. *Maghe v. State*, 620 P.2d 433 (Okl.Cr.1980); *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980); *Bills v. State*, 585 P.2d 1366 (Okl.Cr.1978); *Huitt v. State*, 562 P.2d 873 (Okl.Cr.1977). Likewise, although 19 O.S.Supp.1974, § 138.6 allows the district courts in counties of 200,000 population to appoint an investigator at state expense, no authorization is provided for similar services in counties of less than 200,000. *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980) reversed on other grounds, — U.S. —, 102 S.Ct. 869, 71 L.Ed.2d 1; *Bills v. State*, supra. Moreover, in *Eddings* we noted that the failure to provide an investigator and a psychiatrist at court expense does not violate due process. In view of these prior holdings, the appellant's argument is without merit.

## III

■ Next, the appellant urges that he was denied a proper hearing on the voluntariness of his confession, pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The appellant concedes that the trial judge conducted a hearing concerning the voluntariness of his confession approximately seven months prior to trial. He does not contest the efficacy of that hearing. Rather, he contends that *Jackson v. Denno* contemplates such a hearing sometime during the course of trial. We disagree.

In *Jackson v. Denno*, supra, the Supreme Court held that a defendant in a criminal matter had a constitutional right to have the voluntariness of his confession determined by the trial court prior to its submission to the jury. The Court, however, did not specify when that determination was to be made. We note that in *Denno*, the hearing was sufficient even though it was to be conducted sometime after trial and retrial was not necessary. 378 U.S. at 394, 84 S.Ct. at 1790, 12 L.Ed.2d at 926.

In this case, the appellant's challenge to the voluntariness of his confession was fully heard by the trial judge, albeit seven months before trial. Presumably, all available evidence concerning the voluntariness of the confession was presented for his consideration at that time and the confession was found voluntarily given. The appellant does not contend that the evidence which might have been offered at trial would have differed from that presented at the pretrial hearing. It appears that all the appellant sought at trial was a contemporary determination of the voluntariness of his confession based upon the same evidence as was presented in the pretrial hearing by the same judge who presided at that hearing. We do not believe that *Jackson v. Denno* dictates such needless duplication. Rather, the mandate in that case is satisfied by an independent judicial determination as to the voluntariness of a defendant's confession. That mandate was complied with in this case.

## IV

The appellant's penultimate argument is that the State failed to present sufficient evidence of the corpus delicti independent of his extrajudicial confession and therefore, his motion for a directed verdict should have been sustained.

■ A defendant in a criminal action may not be convicted solely on the weight

of his extrajudicial confession. Rather, the confession must be corroborated by substantial independent evidence of the corpus delicti. Once the confession is corroborated, the State's case is sufficient if the confession, together with the corroborating evidence, could provide the jury with proof beyond a reasonable doubt of the defendant's guilt. *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Jones v. State*, 555 P.2d 63 (Okl.Cr.1976).

■ Substantial independent evidence was introduced to establish the corpus delicti of the crime of murder. The corpus delicti of a murder may be shown by evidence that a body was found under circumstances indicating a violent death. *Davis v. State*, 542 P.2d 532 (Okl.Cr.1975), *vacated*, 428 U.S. 907, 96 S.Ct. 3217, 49 L.Ed.2d 1215. *See also, Smith v. State*, 555 P.2d 626 (Okl. Cr.1976). The testimony of several witnesses coupled with the State's exhibits reflect that the charred remains of a human male were found in the rear of a burned pickup truck. The evidence also indicated that luggage, tools, clothes, and other contents of the vehicle were strewn about the area or buried in the sand. From this, it could be deduced that the demise of the deceased individual had been violent. In view of this evidence, we hold that the appellant's confession was properly corroborated by substantial evidence of the corpus delicti. Accordingly, the appellant's motion for a directed verdict was properly overruled.

■ Finally, the appellant's assertion that an accumulation of error deprived him of a fair trial finds little support in the record and therefore, does not warrant reversal. Accordingly, the judgment and sentence is AFFIRMED.