Larry Dean SMITH, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-78-331.

Court of Criminal Appeals of Oklahoma.

Feb. 10, 1983.

Joseph E. Mountford, Miami, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Chief, Appellate Criminal Div., State of Oklahoma, Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Larry Dean Smith, was tried before a jury and convicted in the District Court of Ottawa County, Oklahoma, Case No. CRF–77–677, of Murder in the First Degree. He was sentenced to suffer the penalty of death, and appeals.

The charges and conviction stem from the death of Willard Denning, whose charred body was found in the back of his burned pickup camper on September 6, 1977. The camper was parked at a chat dump in Picher, Oklahoma. The appellant admitted subsequent to his arrest that he was present at the time the pickup was set ablaze, but maintained he did not participate in the murder. This statement was introduced into evidence at trial.

The appellant argues thirteen points of error on appeal. We shall consider the allegations in a different order than presented us in the briefs.

■ The appellant alleges the trial court erred in overruling his motion for a continuance.

In his attempt to suppress both the confession he had given the police and the evidence obtained from the seizure of the motorcycle he had been riding the day of the murder, the appellant subpoenaed the arresting officer. The officer was hospitalized, and was required to remain there for an indefinite period of time. He was thus unable to appear as a witness, and the appellant moved for a continuance.

The trial court denied the appellant's motion on the grounds that the appellant had already entered a plea to the charge without objection, thereby waiving his right to object to an unlawful arrest. *Stone v. State,* 461 P.2d 962 (Okl.Cr.1969); *Miles v. State,* 416 P.2d 964 (Okl.Cr.1966).

The appellant argues that his plea prior to objecting to the legality of his arrest should not be used to deny his right to present witnesses concerning matters other than his arrest. We note, however, that the arresting officer was not present when the appellant gave his confession. Officers who assisted in the seizure of the motorcycle and who obtained the appellant's confession did testify during an in camera hearing on the appellant's motion to suppress the confession and motorcycle. The missing officer's testimony would have added little, if anything, to the evidence adduced concerning these matters. The decision to grant a continuance lies within the discretion of the trial court. *Lemmon v. State,* 538 P.2d 596 (Okl.Cr.1975). We find no abuse of that discretion in this case.

 Next, the appellant argues the State failed to establish the corpus delicti of the murder independent of the confession at both the preliminary hearing and the trial.

As we stated in *Jones v. State,* 555 P.2d 63 (Okl.Cr.1976) and the cases cited therein, corroborative evidence need not, independent of a confession, be sufficient to establish the corpus delicti beyond a reasonable doubt. Once substantial evidence of the corpus delicti is introduced, a defendant's confession is admissible, if together they provide a basis for a finding of both the corpus delicti and the defendant's guilt beyond a reasonable doubt.

 In the present case, evidence independent of the appellant's confession produced by the State included the medical examiner's report, which concluded Denning died from smoke and/or fire inhalation; photographs of the charred body and pickup camper, which photographs also indicated that Denning's belongings had been rummaged through and strewn about behind the pickup; and pictures of tools belonging to Denning which were partially buried in the sand a short distance from the pickup.

This evidence established that Denning met an unnatural and violent death, and that indices of foul play abounded. It sufficiently met the "substantial evidence" test described above to permit the introduction of the confession for purposes of proving the corpus delicti and the appellant's guilt. See, *Goforth v. State,* 644 P.2d 114 (Okl.Cr. 1982). The trial court properly overruled the appellant's demurrers at the preliminary hearing and the trial.

The appellant's next two assignments of error concern his intent to cause Denning's death.

 Initially, he argues that the trial court should have directed a verdict of Not Guilty in the trial, because the State failed to prove he possessed the requisite intent to constitute murder in the first degree. Evidence adduced at trial revealed that the appellant and his accomplice, Ralph Goforth, rode a motorcycle to a chat dump in Picher, Oklahoma, where Denning was camped; that Denning was beaten; that the appellant and Goforth rummaged through Denning's belongings with intent to rob him of his possessions; that they tried to steal Denning's pickup, but were unsuccessful in their attempts to start it; that the pickup was then set ablaze; and that the appellant and Goforth fled from the location, knowing that their beaten victim was lying in the camper part of the burning pickup.

The events surrounding this gruesome deed clearly provide sufficient indication of the appellant's intention to effect Denning's death.

The appellant's testimony, if believed, would establish that his accomplice beat Denning and set the truck on fire without the appellant's aid, thereby inferring he lacked the necessary mens rea to commit murder in the first degree. Nonetheless, the appellant was present throughout the

entire episode. He voluntarily left the scene, knowing that, in all likelihood, Denning would be engulfed in the flames of the burning vehicle and annihilated thereby. The appellant's participation in the crime rendered him a principal under our laws.[1] He is therefore subject to the same charges and punishment as though he had committed the murder himself.[2] The jury was justified in its conclusion from the facts and circumstances surrounding the appellant's actions that he intended to effect Denning's death. *Clouse v. State,* 389 P.2d 1002 (Okl. Cr.1964).

The appellant's argument that the trial court should have instructed on murder in the second degree presents the same issue of intent. The requested instruction was,

> You are instructed that homicide is murder in the second degree when perpetrated by an act imminently dangerous to another person and evidencing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

As stated above, when the appellant and his accomplice rode away from the scene, leaving Denning lying in the back of a burning pickup, they must have known he would not live. The evidence clearly does not suggest a passive disregard to Denning's life, but rather an active intention that he should die. The instruction on murder in the second degree was not warranted. *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982).

In his next assignment of error, the appellant alleges the voir dire did not conform to the requirements of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

In *Chaney v. State,* 612 P.2d 269 (Okl.Cr. 1980), we noted that *Witherspoon* permits a juror to be excused for cause if the juror's opposition to the death penalty is so great that the juror would refuse to return a verdict of guilty where it was warranted, due to the possibility of the death penalty being imposed; or is so strong that the juror had decided in advance not to impose the death penalty, regardless of the facts of the case. It appears from the transcript of the voir dire that the appellant was under the impression that only the former of these was a legitimate ground, because each time a question was asked regarding the imposition of punishment, he objected. The trial court properly overruled the objections. *Witherspoon,* supra.

Fourteen prospective jurors were excused because of their objections to the death penalty.[3] The appellant specifically mentions three on appeal.[4, 5]

---

1. Title 21 O.S.1981, § 172 states:
 All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.

2. We note in this regard that we must examine the penalty meeted the appellant for his role in this case in light of the recent case of *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In that case, the Supreme Court held that the Eighth and Fourteenth Amendments to the Constitution prohibited the imposition of the penalty of death on a principal in a felony murder who was neither present nor intended any killings to take place during the commission of the crime which he had helped plan.
 We find *Enmund* distinguishable from the present case. The appellant must have known the consequences of leaving a badly beaten man lying inside a burning pickup truck in a deserted chat dump. It is obvious to this Court that the appellant intended to visit death upon his victim. We do not find the appellant's sentence to be excessive in relation to his role in effecting Denning's death. *Enmund,* supra.

3. Ms. Prather, Ms. Frogue, Mr. Rollins, Mr. Hunnicutt, Mr. Allton, Mr. Atkinson, Ms. Woodrome, Ms. Garrett, Ms. Duree, Mr. Boyer, Mr. Pollock, Ms. Brooks, Ms. Kuder, Ms. Cook. A fifteenth prospective juror, Mr. Gowin, said he was opposed to the death penalty, but he could return a verdict of guilty. He was seated.

4. Ms. Prather, Mr. Rollins, Mr. Hunnicutt.

5. Of the eleven persons who were excused but not mentioned by the appellant, ten said they could not return a verdict of guilt and the other said he could vote for guilt, but could not impose the death penalty. All were properly excused under *Witherspoon.*

 The appellant did not object to the excusing of any of the three.[6] As we stated in *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980), error of this nature must be raised by objection, lest it be waived.

 The next assignment of error relates to the photographs that were admitted. There were eight different views of the burnt truck, two photographs of the motorcycle the men were riding, and two views of the body lying inside the camper shell of the pickup. Whenever a photograph is a faithful reproduction of that which it purports to reproduce and is probative, it is admissible for whatever value it may have to the jury. *Pate v. State,* 361 P.2d 1086 (Okl.Cr.1961). Photographs which are principally designed to appeal to the jury's emotions, rather than to prove a fact, are not admissible. *Pate v. State,* supra, *Vierrether v. State,* 583 P.2d 1112 (Okl.Cr.1978). In the present case, however, the danger of prejudice was low, as the photographs have little emotional content. The assignment of error is without merit.

The appellant's next assignment of error concerns the conduct of the prosecutor. The appellant claims that the prosecutor stationed several uniformed police officers about the courtroom, and that the prosecutor himself wore a firearm throughout the trial.

 The appellant failed to object to the presence of the officers in the courtroom. Having so failed to make a timely objection, the error was waived. *Hart v. State,* 535 P.2d 302 (Okl.Cr.1975).

 There was also no objection to the prosecutor's firearm, if one was indeed worn into the courtroom. However, since it is possible, according to appellant's theory, that the jury saw the weapon and the appellant did not (once again, assuming ar-guendo that the prosecutor wore one), we shall more fully address the issue.

Testimony concerning the pistol was presented at the hearing on the motion for a new trial. The appellant's witness, an attorney who also signed an affidavit, stated that he had been told by the prosecutor that the prosecutor had received threats prior to the trial and that the prosecutor carried a pistol at all times. The witness did not see the prosecutor wear the weapon into the courtroom, nor did he see it displayed in the courtroom, but thought the jury may have seen it.

On the other hand, the State presented testimony that the prosecutor checked his gun to his secretary prior to going into court; and that, in any event, the holster was situated in such a position on his hip that it was covered at all times by his coat, and not visible to the jury.

The appellant has failed to sufficiently establish his claim. The disputed record will not support a conclusion that the prosecutor displayed a pistol to the jury. As the decision to grant a new trial rests within the discretion of the district court, we will not reverse that decision absent abuse of the discretion. *Lemmon v. State,* 538 P.2d 596 (Okl.Cr.1975). We find no such abuse.

 During the deliberations on sentencing, the jury sent a note to the trial court asking whether they could recommend a life sentence without parole. The judge replied that such a recommendation would not be binding. In his next assignment of error the appellant maintains that the judge's answer led the jury to believe that only a sentence of death would be acceptable, and that it was reversible error for the court to send the jury a note instead of calling them into open court to answer their question, in accordance with 22 O.S. 1981, § 894.[7]

---

6. Although the appellant was granted a "continuing objection" to the form and substance of the questions asked by the trial court, such an objection did not cover the issue of the improper dismissal. The issue is whether the trial court was justified in dismissing the veniremen without further pursuing their answers to determine whether the jurors fell under one of the two *Witherspoon* exceptions.

7. Title 22 O.S.1981, § 894 states:
 After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire

In *Boyd v. State*, 572 P.2d 276 (Okl.Cr. 1977), we stated that the purpose of Section 894 was to prevent communications from being made to the jury without the parties being present to protect their interests. In the instant case, the record reflects that the defense attorney was aware of the judge's answer and specifically agreed to it. (Tr. 285–286) Thus, the trial court's actions complied with the purpose and intent of Section 894. In addition, the appellant made no objection to either the form or content of the judge's answer. Therefore, any right to allege error on appeal was waived. *Gaines v. State,* 568 P.2d 1290 (Okl.Cr.1977); *Choate v. State,* 476 P.2d 384 (Okl.Cr.1970).

■ The appellant also argues that the trial court sent the jury a note telling them that if they did not reach a verdict within ten minutes he would discharge them and impose a life sentence. The only support of this assertion to be found in the record is an affidavit of the appellate attorney. At the hearing on the motion for new trial, the judge who presided over the appellant's trial stated into the record that he did not send such a note.

The appellant maintains in his supplemental brief that, the judge's statement notwithstanding, such a note did indeed exist, which, to his prejudice, has been lost. He speculates that the note allegedly written and sent to the jury effectively suggested that the judge believed the appellant should receive the death penalty.

The appellant cites *Thurman v. State,* 78 Okl.Cr. 98, 144 P.2d 125 (1943), and *Avants v. State,* 544 P.2d 539 (Okl.Cr.1975) for the proposition that where the record necessary for review is lost or destroyed, at no fault of a defendant, and cannot be substituted, a new trial will be granted. However, to find these cases controlling in the present requires that we agree with the appellant upon the preliminary question of whether the note indeed ever existed. This we cannot do.

The facts in this case simply do not bear the appellant's contention out. Although we believe the argument is made in good faith, we cannot accept it, in light of the lack of evidence of the existence of the note. It would be a dangerous practice for us to accept wholesale the assertions of appellate counsel in these situations. The frivolity and spuriousness of the appeals which could be perpetuated by such a philosophy would be bridled only by counsel's imagination. The assignment of error cannot stand.

■ The appellant alleges in his supplemental brief he was denied effective assistance of counsel. The standard for effectiveness of counsel in this State at the time of appellant's trial was the "farce or mockery of justice" test. We shall thus gauge the performance of appellant's trial counsel on that basis, although we note that our decision would be the same were we to apply the "reasonably competent assistance of counsel test" established in *Johnson v. State,* 620 P.2d 1311 (Okl.Cr.1980).

■ Having fully reviewed the record, we are convinced that the appellant received effective assistance of counsel. Effective assistance of counsel does not mean a defendant must have received victorious or flawless counsel. *Davison v. State of Oklahoma,* 428 F.Supp. 34 (W.D.Okl. 1976). It is not uncommon for defense counsel to not introduce evidence after the State has rested. Thus, counsel's failure to do so in the instant case does not of itself constitute ineffective assistance. Trial counsel for the appellant vigorously cross-examined witnesses for the State and adequately defended the appellant in the face of strong evidence of his guilt. The assignment of error is meritless.

■ The final three assignments may be joined with our consideration of the appropriateness of the death penalty as required

---

to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required

must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called.

by 21 O.S.1981, § 701.13. The ninth assignment is that the State failed to prove the aggravating circumstance beyond a reasonable doubt; the tenth is that there was an accumulation of error resulting in prejudice to the defendant; and the final assignment is that the sentence is excessive. The statute requires this Court to determine whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor; whether the record supports the finding of the aggravating circumstance; and whether the application of the death penalty in this particular case is excessive or disproportionate when compared to the results of other cases.

A careful consideration of the record leads this Court to conclude that the remaining assignments of error are without merit, and the statutory questions must be answered in the negative. The defendant received a fair and impartial trial. He was ably represented by counsel, and there was no prejudicial evidence or testimony improperly admitted against him. The jury was properly instructed concerning the findings it was required to make before it could return a verdict of guilt and before it could impose the death penalty.

 The only aggravating circumstances given the jury was that the crime was especially heinous, atrocious or cruel. The instruction defining that circumstance was similar to the one approved in *Chaney v. State,* supra. Looking at the crime in the light of that instruction, we hold the jury was justified in finding that the killing was *especially* heinous, atrocious or cruel. The victim was beaten into helplessness and left in the bed of his pickup truck, and the truck was then set on fire. He died from the inhalation of flames and smoke. It is clear that the defendant either intended to inflict a high degree of pain or else he was utterly indifferent to his victim's suffering. See, *Eddings v. State,* 616 P.2d 1159 (Okl.Cr. 1980), at 1167–1168.

 We cannot overlook the fact that the appellant's co-defendant, Ralph Goforth, who was tried before a separate jury, received a penalty of life imprisonment.

See, *Goforth v. State,* 644 P.2d 114 (Okl.Cr. 1982). The evidence against Goforth was as strong as that against the appellant. Indeed, Goforth and the appellant each identified the other as the main culprit. See *Goforth,* supra. The crucial distinguishing factor between Goforth's penalty and that which the appellant received is the fact that Goforth was sixteen years of age when the murder was committed, whereas the appellant was nineteen. Obviously the jury in Goforth's case considered his age to be a persuasive mitigating factor. In the appellant's case, no such determination was made.

We do not allow the punishment given the appellant's co-defendant to persuade us that the penalty of death is inappropriate in the appellant's case. The facts and circumstances of this case provide a sufficient justification for imposition of the death penalty. The fact that another jury gave lieniency to the appellant's younger co-defendant for his participation in this crime does not detract from the persuasiveness of the evidence adduced against the appellant.

The murder in this case is comparable to *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982), wherein we affirmed the death sentence imposed for the defendant's murder of a service station attendant; *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982), wherein we affirmed the death sentence imposed upon the defendant for murdering a man in a tavern; *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980), in which we held the defendant's act of shooting a shoe store owner twice in the head during a robbery justified the sentence of death; *Eddings v. State,* 616 P.2d 1159 (Okl. Cr.1980) 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (remanded for resentencing), wherein, the defendant's youth notwithstanding, we determined the death penalty was appropriate punishment for the murder of an Oklahoma Highway Patrolman; and *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), in which we affirmed the death sentence imposed for the defendant's murder of two women. We also note that the present case is unlike the recent case of *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982) in

which we modified the defendant's death sentence to life imprisonment because the facts of the case did not support the aggravating circumstance that the murder was especially heinous, atrocious and cruel. In this case, the beaten victim was left inside a camper and set afire. The autopsy of the victim's charred remains revealed the presence of soot in the victim's lungs, which indicated that he had inhaled fire and smoke before his demise.

We have also compared this case to other capital cases which have been modified to life or reversed for other reasons.[8]

The sentence is not disproportionate to the crime. Accordingly, the judgment and sentence is AFFIRMED.

CORNISH, J., concurs.

BRETT, J., concurs in part and dissents in part.

BRETT, Judge, concurs in part and dissents in part:

I concur that the conviction in this case should be affirmed, but I dissent to the death penalty under the facts of this particular case. I would modify the sentence to life imprisonment.

The facts of this case reflect that the conviction was premised upon the confession of appellant. In his confession he relates that his co-defendant, Goforth, beat the deceased and set fire to the truck. In short, as the majority opinion relates, each defendant laid the blame on the other for the beating and for setting the truck on fire. The heinous nature of the crime cannot be questioned. The deceased was left to burn to death, even though in an unconscious condition. Admittedly, another jury found Goforth guilty and assessed a life sentence upon him. And, it is established law that an aider and abettor is treated the same as a principal. But, when the conviction is left to such an uncertain state as the instant case, the death sentence causes me some concern.

Referring to the trial court's answer to the jury's first question:

Your Honor, we the jury would like to know if the law will permit us, the jury, to recommend life in prison without parole. Thank you.

The trial judge responded:

You may make such a recommendation but it is not binding on the court. The court has no authority to incorporate such recommendation on its judgment and sentence.

Admittedly, trial counsel did not object to the court's answer to the question. Ordinarily such failure to object constitutes waiver. It would have been better had the judge refused to answer the jury's question. Or, had the court stopped his answer at the end of the first sentence, no prejudice could have been claimed whether objected to or not.

In a First Degree Murder trial, when the jury is qualified to assess the death penalty, the court should be most cautious and follow the statutory provisions with certainty. Had the provisions of 22 O.S.1971, § 894 been followed precisely, no question would probably exist.

With reference to the second note allegedly sent to the jury, the affidavit of appellate counsel recites, in part, the following:

That as such he [appellate counsel] was taking civil depositions in the District Courtroom No. 1, between 4:00 p.m. and 5:10 p.m., the attorneys and the court reporters were informed that we would have to clear the Courtroom, as the jury in the case of *State of Oklahoma vs. Larry Dean Smith,* had reached a sentence and would shortly return to the Courtroom.

I immediately left the Courtroom and went to the chamber door of the Honorable Sam C. Fullerton, Judge, where, thereupon, I was informed by the District Judge that he had sent a note in to the

8. *Hall v. State,* 650 P.2d 893 (Okl.Cr.1982); *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980); *Hager v. State,* 612 P.2d 1369 (Okl.Cr.1980).

jury instructing them that if they did not reach a sentence within ten minutes that he would call them back into the Courtroom, discharge them, and then he would pronounce a life sentence. I then looked surprised, and the District Judge stated "That's what the law provides."

The alleged second note was never found in the record and does not appear in the record before this Court. But, counsel argued the matter at the hearing on the Motion for New Trial. Judgment and sentence had already been imposed when the motion for new trial was heard.

The hearing concerning the alleged note went as follows:

THE COURT: Now, Mr. Mountford, you have made some allegations in your affidavit or some statements concerning a note?

MR. MOUNTFORD: Yes.

THE COURT: That you were told that I had sent to the jury.

MR. MOUNTFORD: Yes.

THE COURT: Advising them that if they didn't return with a verdict within 10 minutes that I would bring them back in and discharge them and impose a life sentence?

MR. MOUNTFORD: That's right, Your Honor.

THE COURT: I would like for the record to reflect that I have reviewed the exhibits in this trial, have opened the exhibits which have been prepared by Mr. Freeman [Court Reporter] and were placed in his custody and were sealed and that there is no such note.

MR. MOUNTFORD: I understand that, Your Honor.

THE COURT: In the file, I would further state that to the best of my knowledge I did not send any such note to the jury. And I would further state that Mr. Haney, the Attorney for the defendant, had made several requests to me to call the jury back in and impose a life sentence in view of the fact that the jury had been in the juryroom for a length of time and I declined to do so, and advised Mr. Haney that I was going to let the jury continue to deliberate for some further time because I did not feel that it would be proper to call them back into the courtroom at that time. And I will state under oath, as a District Judge, that I did not prepare and did not send any such note to the jury.

MR. MOUNTFORD: Could I inquire of the Court then, did you send any note to the jury?

THE COURT: Yes, sir, I did send a note to the jury. And you have made reference, I believe, to that note in your motion for a new trial, which is a note that I did send to the jury, yes. Do you want to go into that further?

MR. MOUNTFORD: No, not at this time. Are you saying then, Your Honor, you only sent one note to the jury?

THE COURT: To the best of my knowledge, that is my statement, yes.

MR. MOUNTFORD: Well, I recall, Your Honor, and like I said, I'm an officer of the court, I did come over here and we attempted—Mr. Freeman may recall or may not recall, we attempted to find that. We found one note that had been tore into but we did not—we did not find that note.

MR. DeMIER: If it please the Court, Your Honor, I believe the affidavit of Mr. Mountford does not say that you sent it. He states you said you were going to send it. His affidavit does not set out that you did send it or he saw you send it.

MR. MOUNTFORD: No, I think it sets out that he did send it.

THE COURT: Well, let me examine the affidavit. I have it right here before me.

MR. DeMIER: I'm sorry, it does say that you did send it.

MR. MOUNTFORD: See, that's why the jury come back in that 10 minute period is my understanding.

THE COURT: Well, as I have stated before, I do not recall sending any such note to the jury.

MR. MOUNTFORD: We did attempt to find that note.

THE COURT: I have no recollection of having sent any such note to the jury stating that if they did not return within 10 minutes that I was going to bring them back into the courtroom. You didn't see any such note, did you, Mr. Mountford?

MR. MOUNTFORD: That particular note, I don't believe I did. I saw the other note. We tried to find the note.

THE COURT: Who tried to find it?

MR. MOUNTFORD: Well, G.C. [Court Reporter] and I. We could not find it. The one note that we found was tore.

THE COURT: And do you know what disposition was made of that note?

MR. MOUNTFORD: Which one is that?

THE COURT: The one that was torn?

MR. MOUNTFORD: Well, its there, isn't it?

THE COURT: Well, this note is not torn. It is a complete note that I sent to the jury.

MR. MOUNTFORD: That's when they inquired as to whether or not they could assess a life without parole. That note, I remember that note.

THE COURT: Yes, sir. That's the only note that I have any memory of sending.

MR. MOUNTFORD: Then its your statement, Your Honor, that you did not send them a note or is it your statement that you don't recall?

THE COURT: My statement is that I do not recall sending them any such note.

MR. MOUNTFORD: If I was to bring some members of the jury, and I have not talked to any members of the jury because its my understanding it's improper, but we attempted to find that note. It is my recollection that the parties involved, at that time, did remember such a note and we attempted to find it and we could not find it. The notes were left, of course, in the juryroom. That would have been the last note or the last type of instruction that was sent to the juryroom before they returned or to—for the purpose of assessing the punishment. If the Court will grant me leave, then I would make inquiry of the jury. But it is my understanding that there was such a note sent, but that is why they come into the courtroom and told us to clear the courtroom, that the jury would be back in a few minutes.

THE COURT: Because I sent them a note?

MR. MOUNTFORD: Right.

THE COURT: That's why they would be in?

MR. MOUNTFORD: Yes. Mr. Freeman was there. He may recall or he may not. But we did get out of the courtroom and that's when we made inquiry if the jury was coming back and they said, no, they had been instructed to return and assess the penalty within 10 minutes, and if they had not done so, you were going to discharge them and assess life—a life penalty.

THE COURT: Well, then—

MR. MOUNTFORD: —And that's when you turned around and I looked kind of surprised like that and you said, well, that's what the law provides, and I take it that you indicated that that's what—

MR. DeMIER: —If it please the Court, Your Honor, that's their allegation. No note was found and those people who said these things have not been brought forth to testify and they were available for the defendant to subpoena if he needed to. I asked that this narrative type interrogation of the Court and conversation with the Court and defendant's counsel be terminated on the basis that they can't provide this phantom note that is suppose to have appeared.

MR. MOUNTFORD: Well, it's a complete surprise to me, is the statement of the Court because—

MR. DeMIER: —If it please the Court, Your Honor, whether or not the Court made that statement is not relevant if the fact no note appeared. This witness, he's testifying as a witness and attorney for the defendant both, he's testifying to nothing but blatant hearsay of what some other people told him and how the people on the jury knew about the note. Well, the note is not here and the jurors

aren't here and I don't believe it's proper for him to testify in this manner, nor have this narrative testimony between the Court and the witness, who is also the defendant's counsel.

THE COURT: Well, the Court will stand on its statement and I will decline, at this time, to grant leave to subpoena any further witnesses in regard to this matter.

MR. DeMIER: I don't know how the State cross-examines in this type of situation, so I object to it, Your Honor.

MR. MOUNTFORD: Well, as God is my witness, that's exactly what happened and that's what the Court said.

THE COURT: Well, I would have to state that I have no recollection of that and that I would have to say, Mr. Mountford, that you are incorrect.

MR. MOUNTFORD: I'll take an exception to that, Your Honor. We would asked leave to bring in members of the jury and continue this motion for new trial.

THE COURT: The request is denied.

Was there a second note sent to the jury? That question is not answered by the record. If such a note was sent, it could be construed as being coercive in forcing a verdict by the jury. I believe the court should have continued the hearing on the motion for new trial and allowed counsel to subpoena, at least, the jury foreman. The only inquiry would have concerned whether or not a second note was sent to the jury. This appears to be pertinent because the trial judge did not remain unequivocal in his answers. If there is any doubt, it should be resolved in appellant's favor. In *Wilson v. State*, 534 P.2d 1325 (Okl.Cr.1975), this Court stated in its dictum, while discussing the question of prejudice toward a defendant, "The court could call the bailiff, judge and jurors to testify as to what occurred and effect of such occurrence." At 1326, 534 P.2d. I believe the court in this case should have allowed counsel to subpoena the jury foreman to clarify the question of the second note. As the record now stands, any prejudice toward appellant remains unresolved.