Huey Don ODUM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–713.

Court of Criminal Appeals of Oklahoma.

Sept. 21, 1982.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Okl., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Huey Don Odum was convicted of Murder in the First Degree in Bryan County District Court, Case No. CRF–79–713. In the second stage of the trial, pursuant to 21 O.S.1981, § 701.10, the jury assessed the death penalty.

On February 20, 1979, the victim, Robert Hosier, went to the Roadrunner Club in Durant, Oklahoma to collect an insurance premium from an employee of the club. While there the victim played pool with the defendant, Huey Don Odum and his brother Joe Odum. The defendant wanted to play pool for five dollars ($5.00) per game, but the victim refused. The Odum brothers then left the bar with Isaac Pistubbe and sixteen year old Terry Matlock. After visiting a friend's house all four returned to the Roadrunner Club with Terry Matlock remaining in the car. Matlock testified that when the three men left the club the defendant appeared very angry. Joe Odum then backed the car down the road and they waited for the victim to exit the club.

Wayne Powell testified that the victim asked him if he would follow him back to his motel, which he did. Joe Odum accompanied by the defendant, Pistubbe, and Matlock followed the victim and Mr. Powell to the Markita Inn. Both Pisstube and Matlock testified that the defendant got out of his car, approached the passenger side of Mr. Powell's pickup truck, raised a gun and fired. Joe Odum asked the defendant "Did you get him?", and the defendant replied affirmatively. Robert M. Hosier was found dead at 3:45 a. m. on February 21, 1979, of a single gunshot wound to the neck.

Defendant claims in his first assignment of error that the trial court erred in refusing to provide the jury with separate not guilty verdict forms for murder in the first degree and the lesser included offense of manslaughter in the first degree. The record discloses however, that the trial court gave the jury three verdict forms: Guilty of Murder in the First Degree; Guilty of Manslaughter in the First Degree; and Not Guilty. Further, the trial court's Instruction No. 14 was sufficient to apprise the jury of all contingent conclusions both favorable as well as unfavorable for the defendant. See, *Webster v. State,* 96 Okl.Cr. App. 44, 248 P.2d 646 (1952).

In his second assignment of error the defendant alleges that witness, Officer Hendrix, interjected an evidentiary harpoon on direct examination by volunteering a statement which was taken in violation of defendant's right against self-incrimination.[1] In *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.1980), we found the relevant factors of evidentiary harpoons to be:

1) They are generally made by experienced police officers;

2) They are voluntary statements;

1. Q. Did you hear Huey Don Odum make any statement regarding this crime thereafter?

A. That he went to the Markita Inn—
MR. PHELPS: Your Honor, that is not responsive to the question.

THE COURT: The response would be yes or no.
WITNESS: Yes. (Tr. 72–73).

3) They are wilfully jabbed rather than inadvertent;

4) They inject information indicating other crimes;

5) They are calculated to prejudice the defendant; and

6) They are prejudicial to the rights of the defendant on trial.

We fail to see how Officer Hendrix's testimony comes within the definition of an evidentiary harpoon because: 1) although Officer Hendrix was a seven year veteran, his testimony was not voluntary but responsive to the question asked by the prosecutor; 2) there was no evidence that his response to the question was wilfully jabbed rather than inadvertent; 3) the testimony did not inject evidence of other crimes; 4) and the testimony was not calculated to prejudice the defendant. Further, the statement interjected by Officer Hendrix was cumulative in substance because the testimony of two other witnesses placed the defendant at the Markita Inn, the scene of the crime, on the evening of the killing.

█ Although defendant objected to the statements made by Officer Hendrix and received a *Jackson v. Denno*,[2] hearing, the trial court did not rule on its inadmissibility.[3] It is defendant's responsibility to preserve matters for appeal and absent a ruling on defendant's objection any error is deemed waived. See, *Graves v. State*, 563 P.2d 646 (Okl.Cr.1977). This assignment of error is therefore without merit.

█ In his third assignment of error, defendant alleges he was denied a fair trial because of additional evidentiary harpoons volunteered by Officer Hendrix. A review of the record indicates that defense counsel failed to object at trial to Officer Hendrix's testimony regarding other crimes. It is well settled that unless objection is made to evidentiary harpoons any error is deemed waived and cannot be raised for the first time on appeal. *Bruner v. State*, 612 P.2d 1375 (Okl.Cr.1980).

Defendant also complains of Officer Hendrix's testimony that defendant's brother admitted ownership of a watch which was found at the scene of the crime. We are of the opinion that this statement did not constitute an evidentiary harpoon for the reason set out in the second assignment of error. *Bruner v. State*, supra. Further, the trial court correctly sustained an objection to the testimony on the basis of inadmissible hearsay. This assignment of error is therefore without merit.

In his fourth assignment of error defendant alleges the trial court committed reversible error by admitting evidence of his escape from county jail. Specifically the defendant contends that the escape is not admissible under any exception in the evidence code, that the evidence was more prejudicial than probative, and that the State failed to comply with *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979).

█ Sheriff Highfield testified that on June 14, 1979, the defendant escaped from the Bryan County Jail and was apprehended that same day. It is well established that evidence of escape from custody of an accused is admissible as showing consciousness of guilt. *Jackson v. State*, 12 Okl.Cr. 406, 157 P. 945 (1916). See also, *Brinlee v. State*, 608 F.2d 839, 10th Cir. 1979, cert. denied, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed. 733 (1980). We find the trial court did not abuse its discretion in finding the evidence of escape more probative than prejudicial. *Stowe v. State*, 590 P.2d 679 (Okl.Cr.1979).

Finally we find from a review of the record that the State complied with procedures necessary to introduce evidence of other crimes, as set forth by *Burks v. State*, supra. The State furnished the defendant with written notice, ten (10) days before trial, of its intent to introduce evidence of the escape. The evidence was found by the trial court to be probative and proof of the

---

**2.** *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**3.** "... then at this point I am not going to rule on the admissibility of the statement made by this defendant and you are not going to pursue it." ·(Tr. 85).

escape was clear and convincing. The trial court also gave the jury a limiting instruction regarding the escape.

■ We further note that although defendant urged a motion in limine regarding evidence of the escape immediately before trial, defense counsel did not object to the evidence at the time of the introduction. We have repeatedly stated that motions in limine are not binding on the trial court and in order to properly preserve an objection it must be raised again during trial. *Teegarden v. State,* 563 P.2d 660 (Okl.Cr.1977). The defendant's fourth assignment of error is therefore without merit.

■ In his sixth assignment of error, the defendant asserts reversible error was committed when the trial judge failed to instruct the jury that adverse inferences were not to be drawn from his failure to testify. In support of his contention he cites *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), however *Carter* is limited to those cases in which defendant requested the instruction. In the present case, defendant did not request the instruction, nor raise the issue in his motion for new trial or petition in error. His argument has been waived, therefore this assignment of error is without merit.

■ Defendant's seventh assignment of error alleges that the trial court erred in allowing the prosecutor to make improper comments during both stages of the bifurcated trial. We first note that the defendant failed to object to any of the prosecutor's remarks, and unless the errors are of fundamental magnitude they are deemed waived. *Holt v. State,* 628 P.2d 1170 (Okl. Cr.1981). After a careful examination of the record in this case, we find none of the statements made by the prosecutor violated a substantial right of the defendant. This assignment of error is therefore without merit.

■ In his eighth assignment of error defendant alleges that the trial court denied him a fair trial by not allowing defense counsel to present defendant's theory of the case in closing argument. In closing argument, defense counsel attempted to persuade the jury that Joe Marvin Odum, defendant's brother, was the one that had the gun and shot the victim.[4] We agree with the trial court that the record is devoid of any evidence from which such implications can be made. Both counsel for the State and the defendant are limited in their arguments to discuss only the evidence and inferences and deductions arising therefrom. *Holt v. State,* supra. Therefore this assignment of error is without merit.

■ Finally, we consider the defendant's fifth assignment of error in which he alleges that the sentence of death is inappropriate. In assessing the death penalty, the jury found the only aggravating circumstance present was that the murder was especially heinous, atrocious or cruel. Defendant argues that this aggravating circumstance is unconstitutional. However, in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the U. S. Supreme Court determined that an aggravating circumstance, which authorizes the death penalty to be imposed for especially heinous, atrocious or cruel murders, is not unconstitutionally vague or overbroad.

Defendant further argues that the aggravating circumstance is unsupported by the evidence. This Court has defined the words "heinous, atrocious or cruel" as follows: "... heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and that cruel means designed to inflict a high degree of pain with utter indifference to, or enjoyment of the suffering of others." *Eddings v. State,* 616 P.2d 1159 (1980); —— U.S. ——, 102 S.Ct. 869, 71 L.Ed.2d 1 (Jan.

---

4.    MR. PHELPS: But the door is open and Joe Marvin Odum opens that door and he has a gun in his hand. He is the one with the gun.

    MR. STUBBLEFIELD: Your Honor, I would object to that as completely unsupported by the evidence.

    THE COURT: Sustained. (Tr. 400).

1982) Reversed for resentencing, citing *State v. Dixon,* 283 So.2d 1 (Fla.1973).[5]

 In *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the Supreme Court of the United States invalidated petitioner's death sentences because in light of the facts or circumstances of the murders that Godfrey was convicted of committing, the Georgia Supreme Court failed to apply a constitutional construction of the aggravating circumstance "outrageously or wantonly vile, horrible or inhuman." The Court further said, "There is no principled way to distinguish this case in which the death penalty was imposed from the many cases in which it was not." *Godfrey* thus reiterated the constitutional requirement imposed in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), that the death penalty not be imposed in an arbitrary or capricious manner.

In accordance with the above constitutional requirements and our statutory imposed duty[6] to review the propriety of the death penalty, we now turn to the facts of the instant case. The evidence adduced at trial was that prior to the murder there had been an altercation in a bar between the victim and the defendant. The defendant shot the victim once in the neck. Fred Jordan, the pathologist, testified that the victim was rendered unconscious immediately and died within minutes due to asphyxiation. There was no evidence of any physical or mental suffering whatsoever and the manner of killing cannot be said to lie at the "core" of the statutory aggravating circumstance. *Harris v. State,* 237 Ga. 718, 230 S.E.2d 1 (1976).

---

**5.** Trial Court's Instruction No. 8A provides:
   You are further instructed that the term "heinous", as that term is used in these instructions means extremely wicked or shockingly evil, and that "atrocious" means outrageously wicked and vile; and "cruel" means designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others; pitiless.

**6.** 21 O.S.1981, § 701.13(C) requires:
   C. With regard to the sentence, the court shall determine:

We believe the evidence does not support the jury's finding of the statutory aggravating circumstance that the murder was "especially heinous, atrocious, or cruel". Therefore the judgment and sentence appealed from should be and the same is, hereby, MODIFIED from a sentence of death to life imprisonment and as so modified, is AFFIRMED.

BRETT, P. J., and CORNISH, J., concur.

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
   2. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in this act; and
   3. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.