Kenneth Franklin NUCKOLS,
Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–83–153.

Court of Criminal Appeals of Oklahoma.

Oct. 19, 1984.

Rehearing Denied Nov. 15, 1984.

18.  *Stone v. Hodges,* 435 P.2d 165 (Okl.1967).

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Brimer Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BRETT, Judge:

Kenneth Franklin Nuckols, the appellant herein, was charged, tried and convicted in the District Court of Pottawatomie County, Case No. CRF–82–273, for the offense of Murder in the First Degree. 21 O.S.1981, § 701.7(A). He was sentenced to death. We affirm the judgment and sentence.

Sometime in late July, 1982, the appellant and a friend, Greg Campbell, stopped on Interstate–40 east of Harrison, purportedly to give aid to a motorist. The motorist, Freddie Orville Howell, was having trouble with his car headlights, and Campbell repaired them.

Appellant and Campbell invited Howell to have a beer, and the three traveled in the Howell and Campbell autos to a nearby gas station. Eventually they drove to an area six miles west of Shawnee at County Road 114 and Highway 9A. They got out of the cars and began talking. When Howell stepped between Campbell and the appellant, the latter hit Howell in the head with a ball peen hammer obtained from the trunk of Campbell's car. Urged by Campbell to "keep hitting him", the appellant struck Howell three times with the hammer. Campbell took the hammer from appellant and joined him in hitting, kicking and stomping Howell. After taking Howell's money, the pair loaded his body into the backseat of his car. Appellant, driving Howell's car, followed Campbell to an area on Interstate–40 in Seminole County, where the auto was abandoned.

On August 1, 1982, Howell's partially decomposed body was found in the car. A subsequent autopsy revealed he died from multiple skull fractures, lacerations and injuries to the brain. He also suffered several fractured ribs, and injury to the genitals.

## I.

In his first assignment of error, the appellant contends two statements made by him regarding this case were obtained in an unconstitutional manner. He asserts the trial court erred in overruling his motion to suppress both statements.

On August 20, 1982, the appellant was taken into custody at about 11:00 p.m. by Pottawatomie County Sheriff Ruie Burks. He was read the so-called *Miranda*[1] warnings and taken to the Pottawatomie County District Attorney's Office, where he was again read his rights and questioned about a homicide in Lincoln County.

At about 4:00 a.m. the following day, appellant confessed to the Lincoln County homicide. When appellant was asked about his involvement in the instant case, he asserted his right to a lawyer and all questioning ceased. Appellant was placed in a holding cell at the Pottawatomie County Jail.

That evening at about 10:00 p.m., the appellant asked to speak with Sheriff Burks concerning the Pottawatomie County case. After being read his *Miranda* warnings, he recounted his involvement in Howell's death. The following evening, again at his request and after a reading of *Miranda* warnings, he gave a more detailed statement to District Attorney's Investigator Robert Mayo.

The statement to Burks was audio-taped, and the second statement was recorded on video-tape. Both recordings were played to the jury at trial.

Appellant's constitutional attack is threefold. *First,* he contends the statements regarding this case were the fruits of an unlawfully obtained confession to the Lincoln County murder, and thus were suppressible. *Second,* he contends the Pottawatomie County statements were obtained

after he asserted his right to counsel. *Third,* he asserts the Pottawatomie County statements were obtained through coercive tactics by police. We reject all three contentions.

## A.

Regarding appellant's first argument, it is clear "the exclusionary sanction applies to any 'fruits' of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews,* 445 U.S. 463, 470, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537 (1980). Were we to find the Lincoln County statement unconstitutional, the Pottawatomie County statements would be at least potentially unlawful.[2]

■ However, we find no constitutional violation occurred regarding the Lincoln County confession. Appellant contends police reinstated interrogation, after he had requested that questioning cease. This was done, appellant contends, through the use of a false friend. The police disputed appellant's version of this weekend. We note that the facts relating to this issue are hotly disputed by the litigants. However, we have held when sufficient evidence exists in the record to support the trial court's ruling, that ruling will not be disturbed on appeal. *Smith v. State,* 674 P.2d 569 (Okl.Cr.1984). Because sufficient facts do emerge to support the trial court's ruling, we reject the appellant's argument.

## B.

Appellant next asserts his request for an attorney before further interrogation was

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Even if we were to hold that the confession regarding the Lincoln County homicide was improperly obtained, this finding would not end our inquiry. We would then be obligated to determine "whether, granting establishment of

the primary exploitation of that illegality, the [second confession] .... has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

not honored by police, and the Pottawatomie County statements were thus improperly admitted.

■ In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court affirmed that once an accused has asserted his right to an attorney, he may not be subjected to further custodial interrogation. *Id.* at 485, 101 S.Ct. at 1885. Only when the suspect himself initiates subsequent interrogation is a waiver of the right to counsel possible. *Id.*

■ In this case, it is undisputed that after confessing to the Lincoln County homicide, the appellant refused to talk about the Pottawatomie County case, and asserted his right to counsel. It also is undisputed he was then immediately taken to the county jail and placed in a holding cell. Appellant testified at a hearing on his motion to suppress that Jailer Billy Ware thereafter expressed disbelief at appellant's predicament, urged him to confess, and finally inquired of appellant whether to call Sheriff Burks. Ware denied that he impelled appellant to confess or that he urged the appellant to call Burks. Although he admitted expressing surprise that appellant was in such a dilemma, he stated he had known appellant's family for some time and this was the basis for his comment. He also admitted engaging in small talk unrelated to the case.

We agree with Justice Powell in his concurring opinion in *Edwards* that our resolution of this issue focuses on two questions: "(i) was there in fact 'interrogation', *see Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and (ii) did the police 'initiate' it." *Edwards v. Arizona, supra*, 451 U.S., at 490, 101 S.Ct. at 1887 (Powell, J. concurring). In short, did Ware's comments initiate a subsequent interrogation?

Our resolution of the factual dispute presented is of paramount importance to this question. Were we to agree with the appellant's version, we would hold that the interrogation was initiated by Jailer Ware.

Agreement with the State's version would compel a contrary holding. However, the conflict in testimony was resolved by the trial court when it overruled the motion to suppress. In *Lott v. State*, 586 P.2d 70 (Okl.Cr.1978) we ruled that "[s]ince the defendant's motion to suppress the confession because of denial of the right to counsel revolved around a factual question, determined adversely to the defendant by the trial court, it will not be disturbed on appeal where supported by sufficient evidence...." *Id.* at 72. *Accord Smith v. State*, supra. We believe that rule is applicable here, as sufficient evidence was presented to support the trial court's ruling.

Neither Ware's expression of disbelief at appellant's situation nor his discussion with appellant of collateral matters constituted a re-initiation of interrogation. In *Rhode Island v. Innis, supra*, the United States Supreme Court defined interrogation as "express questioning or its functional equivalent...." including "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are likely to elicit an incriminating response from the suspect." *Id.*, 446 U.S., at 301, 100 S.Ct. at 1689–1690. We agree, again with Justice Powell, that "police do not impermissibly 'initiate' renewed interrogation by engaging in routine conversations with suspects about unrelated matters." *Edwards v. Arizona, supra*, 451 U.S., at 490, 101 S.Ct. at 1888 (Powell, J., concurring). Ware's conversations fit this category, and the appellant's claim of error is rejected.

### C.

We now turn to appellant's argument that his statements were the product of coercion by police. He asserts that he was held incommunicado in a tiny holding cell, forcing him to involuntarily confess.

In determining the voluntariness of a confession, we have adopted the test articulated by the Supreme Court in *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961):

Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Id.* at 602, 81 S.Ct. at 1879. We adopted this formulation in *In Re Pate,* 371 P.2d 500 (Okl.Cr.1962). *See also Castleberry v. State,* 522 P.2d 257 (Okl.Cr.1974). Proper analysis of a confession under this test requires consideration of "the totality of the circumstances, both the characteristics of the accused and the detail of the interrogation." *Lee v. State,* 637 P.2d 879, 883 (Okl.Cr.1981). This standard of review is buttressed by submission of the voluntariness issue to the jury. *Lott v. State,* supra.

At a pre-trial motion to suppress hearing, appellant testified that, after asserting his right to counsel following the Lincoln County statement, he was placed in a small holding cell. Throughout the time of his detention there, he shared the cell with two to five drunks. He testified that he was not placed in the main cell block until after he confessed to Sheriff Burks. And, he claimed he was repeatedly subjected to questions and comments by Jailer Ware. When asked why he decided to talk to Burks, appellant explained, "when I'm in the drunk tank, a small tank like that, well, I just pace back and forth, no cigarettes, nothing to read or something like that. It completely just drives me nuts being in a small tank like that or cell." These factors, appellant claims, confirm his argument that the statements were the result of coercive tactics by police.

■ However, while the record establishes appellant was indeed jailed from 4:00 a.m. to 10:00 p.m., other factors negate his claim of involuntariness. It is undisputed that Ware offered to call the appellant's parents for him, and Burks testified that all prisoners are entitled to two telephone calls. Moreover, there is no assertion he was denied access to an attorney or his

family during this period of incarceration. There is no indication he ever had visitors. Furthermore, Sheriff Burks presented a legitimate security reason for separating appellant from the main jail population; Greg Campbell, a co-defendant, was being housed in the main cell block. We have already established that sufficient evidence was presented to refute appellant's claim of coercion on the part of Ware. This case, therefore, does not present the kind of coercion condemned by the Supreme Court in its major cases on this issue. *See Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Reck v. Pate,* 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Fikes v. Alabama,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); *Turner v. Pennsylvania,* 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); *Chambers v. Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); *Ziang Sung Wan v. United States,* 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed. 131 (1924).

We further note the appellant himself testified he was not induced to confess through promises or threats, and was not physically abused by authorities.

The confessions entered as evidence in this case were not the product of coercion. We hold the trial court properly overruled the appellant's motion to suppress.

## II.

■ Appellant's second assignment of error alleges two prospective jurors were excused for cause in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). However, appellant did not object at trial to the exclusion of these prospective jurors. Error of this nature must be raised by objection in the trial court, or it is waived. *Smith v. State,* 659 P.2d 330, 335 (Okl.Cr.1983), *vac. on other grounds,* — U.S. —, 104 S.Ct. 324, 78 L.Ed.2d 297; *Hays v. State,* 617 P.2d 223, 231 (Okl.Cr.1980). We accordingly reject this assignment of error.

## III.

In his next assignment of error, the appellant alleges six potential jurors were

excused for cause due to their opposition to capital punishment. Wholly apart from his argument that two of these potential jurors were improperly excused under *Witherspoon v. Illinois, supra,* is his argument that exclusion of these six potential jurors from the guilt phase of his trial was constitutional error. He theorizes this exclusion resulted in systematic exclusion of a fair cross-section of society from the venire panel, and denied him a fair and impartial jury, citing *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) and *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), respectively.

■ Appellant urges this Court to find, in support of his theory, that these exclusions resulted in 1) a jury which was conviction-prone; 2) a jury panel systematically purged of women and blacks, two groups he claims are traditional opponents of capital punishment; and 3) a jury which had its attention unduly focused on sentencing before guilt had properly been decided. We do note that these findings have recently been made by two federal district courts in similar challenges. *Keeten v. Garrison,* 578 F.Supp. 1164 (N.D.N.C.1984) rev'd, 742 F.2d 129 (4th Cir.); *Grigsby v. Mabry,* 569 F.Supp. 1273 (E.D.Ark.1983).

However, appellant's contention must be rejected for two reasons. First, appellant has provided this court with no evidence to support the factual conclusions he asks us to reach. While the federal courts in *Grigsby* and *Keeten* did adopt similar findings, we will not take judicial notice of them.

■ Second, trial counsel did not object to the exclusion of these jurors on the basis urged by appellate counsel. Any error, thus, was waived. *Ake v. State,* 663 P.2d 1 (Okl.Cr.1983), *cert. granted* on other grounds, —— U.S. ——, 104 S.Ct. 1591, 80

L.Ed.2d 123 (1984). *See also Hulsey v. Mabry,* 569 F.Supp. 1273, 1324 (E.D.Ark. 1983).

## IV.

■ The appellant next complains he was denied due process when the trial court failed to order a second preliminary hearing on the aggravating circumstance alleged in the bill of particulars, which was filed after arraignment. The appellant asks us to treat the bill of particulars the same as the second page of an information alleging former convictions for enhancement of punishment. Viewed in this manner, a preliminary hearing must be had on the bill of particulars, or the trial court loses jurisdiction, according to the appellant's analogy. *See Carter v. State,* 292 P.2d 435 (Okl.Cr.1956).

We considered this precise issue[3] in *Brewer v. State,* 650 P.2d 54, 61 (Okl.Cr. 1982), and wrote:

> We reject this argument for two reasons. Initially, title 21 O.S.1981, § 701.10, does not provide for a preliminary hearing on a bill of particulars filed in a first degree murder case. If the legislature had intended such a procedure, it presumably would have so stated in the statute. Secondly, the leading case which espoused the fundamental right to preliminary hearings in AFCF cases, *Carter v. State,* 292 P.2d 435 (Okl.Cr.1956), cited by the appellant, is distinguishable from the cases brought under 21 O.S.1981, §§ 701.10 et seq. In *Carter,* we held that a preliminary hearing on AFCF charges is necessary because a defendant has a right to be informed of all possible punishments which he faces upon conviction of a certain offense. The enhanced penalty is not reflected in the particular statute defining the crime with which one is charged, thus the only way for a defendant to be informed of

---

3. In a corollary to this proposition, appellant asserts he was not given sufficient time to prepare for the death phase of his trial, as the Bill of Particulars was not filed until 10 days before trial. However, trial counsel did not seek a continuance of the trial date, and we will not second guess counsel's decision to prepare for trial in the time allotted. Had trial counsel requested a continuance and not received it, the issue would have been properly preserved and would have been examined to ascertain if reasonable notice was given.

the potential enhanced penalty is through the preliminary hearing. However, 21 O.S.1981, § 701.9, states that, 'A person who is convicted of or pleads guilty or nolo contendre [sic] to murder in the first degree shall be punished by death or imprisonment for life.' Thus, a defendant charged with first degree murder in Oklahoma need only consult the statute to ascertain all possible penalties he faces.

In addition, 21 O.S.1981, § 701.10 specifically states that, 'Only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible.' This provision removes all possible surprise or uncertainty concerning the nature of the potential penalties from the sentencing stage of the trial. It is apparent that there is no need for a preliminary hearing on the bill of particulars in capital cases.

We have adhered to this rule in our more recent cases. *Stafford v. State*, 665 P.2d 1205, 1210 (Okl.Cr.1983); *Johnson v. State*, 665 P.2d 815, 818–19 (Okl.Cr.1983); *Jones v. State*, 660 P.2d 634, 639 (Okl.Cr.1983). We accordingly reject appellant's argument.

## V.

The appellant next asserts the trial court erred in allowing photographs of the victim's head and face to be entered as evidence. We disagree.

The State correctly asserts admission of photographs rests largely within the discretion of the trial judge, whose ruling will not be disturbed on appeal absent an abuse of discretion. *Glidewell v. State*, 626 P.2d 1351 (Okl.Cr.1981). An abuse of discretion will be found, however, when the photographs are gruesome, and their probative value is substantially outweighed by potential prejudice to the accused. *Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958); 12 O.S. 1981, § 2403.

In this case the photographs cannot be characterized as gruesome, and we find no abuse of discretion in their admission. We note that the photos were small in size. They were prepared by, and did corroborate, the findings of the medical examiner. *See Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983), case remanded on other grounds, —— U.S. ——, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984).

We also observe the trial court carefully considered the admissibility of each photograph. The fact the trial court refused to admit the only gruesome photograph of the group further evidences the care taken in this regard.

## VI.

We next turn to the appellant's argument the jury was reversibly tainted by evidence of other crimes committed by this appellant. The appellant's complaint is that certain statements in his video-taped confession should have been deleted before viewing by the jury. On appeal, he points to the following:

INVESTIGATOR MAYO: Okay. Do you recall getting any money from Greg that was from this guy?

MR. NUCKOLS: I really, you know, I really can't remember if he gave me any that night or not, you know.

INVESTIGATOR MAYO: Okay. If he got money, did he usually give you some?

MR. NUCKOLS: Yeah, you know, if we ever, you know, got any money, we usually split it.

Appellant asserts, and we agree, that "[t]he general rule is that when one is put on trial, one is to be convicted—if at all—by evidence which shows one guilty of the offense charged; and proof that one is guilty of other offenses not connected with that for which one is on trial must be excluded." *Burks v. State*, 594 P.2d 771, 772 (Okl.Cr.1979). This has been a rule in our jurisdiction virtually since statehood, *see Smith v. State*, 5 Okl.Cr. 67, 113 P. 204 (1911), and has been incorporated into our evidence code. *See* 12 O.S.1981, § 2404 B.

However, we also have held that where there is only an implication of other

crimes and possibly an implication that is apparent only to defense counsel, such an implication is not the type of evidence which the general rule is intended to exclude. *Mahorney v. State*, 664 P.2d 1042, 1046 (Okl.Cr.1983); *Burks v. State*, 568 P.2d 322, 324 (Okl.Cr.1977). We note the trial court, after carefully reviewing the thirty-minute video tape in an *in camera* hearing, could detect no evidence of another crime. Even appellant "fails to state what crime he was accused of committing", *Mahorney, supra,* and labels it evidence of a "theft or robbery or some other type of crime." Brief of Appellant, 61. This evidence "does not constitute such a specific reference to defendant's involvement in other offenses to cause reversal." *Alger v. State*, 603 P.2d 1154, 1156 (Okl.Cr.1979).

Even if we held error did occur, we would not reverse on this basis. In *Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that constitutional error results in reversal unless the error is harmless beyond a reasonable doubt. This rule is consistent with our statutes, 20 O.S.1981, § 3001.1, and we have specifically applied it to state evidentiary issues regarding evidence of other crimes. *Lemos v. State*, 642 P.2d 279, 281 (Okl.Cr.1982).

Turning to the evidence in this case, we find that the proof of appellant's guilt is overwhelming. Not only did the appellant twice confess to authorities, on each occasion he gave a detailed description of his crime. These statements were corroborated in virtually every detail by police investigation and expert testimony. Therefore, even if error had occurred, no reasonable possibility exists that this would have contributed to the jury's finding of guilt.

## VII.

■ Appellant next claims the prosecutor engaged in improper closing argument at both stages of trial. We note trial counsel failed to interpose a single objection during argument at either stage. This error has not been properly preserved, and we will therefore review the record for fundamental error only. *Coleman v. State*, 668 P.2d 1126, 1135 (Okl.Cr.1983).

■ In reviewing this record, we find some improper comments were made in the second stage argument. However, these were not fundamental in nature and, even if objected to, would be insufficient to warrant modification of the sentence. *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), *modified* on other grounds, *sub. nom., Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984). This assignment of error is without merit.

## VIII.

■ In his next two assignments of error, the appellant contends the jury instructions in the second stage were improper. He contends the trial court failed to instruct that if the jury was unable to reach a verdict in a reasonable time, the jury would be dismissed and a life sentence would be imposed. He also claims that the trial judge should have given the jury "particularized guidance" in its consideration of mitigating circumstances. However, trial counsel failed to object to any of the court's proposed instructions, and did not offer requested instructions on these issues. Accordingly, these issues were not properly preserved for appellate review. *Smith v. State*, 568 P.2d 639 (Okl.Cr.1977); *Ake v. State, supra.*

Furthermore, we have reviewed the second stage instructions for fundamental error, and find that they gave the jury ample guidance in its consideration of the sentence. *Chaney v. State, supra.* at 279–280.

## IX.

■ The appellant next argues that the evidence did not support the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel." [4] 21 O.S. 1981, § 701.12(4). He reasons that because this was the only aggravating cir-

---

**4.** In a related assignment of error, appellant asserts this Court "has not made the appropriate

limitations and harmonizations regarding its heinous-atrocious-cruel aggravating circum-

cumstance alleged by the State, the sentence must be modified to life imprisonment. We reject the appellant's argument.

We explained the meaning of this aggravating circumstance in *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980), *rev'd* on other grounds, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), *modified*, 688 P.2d 342 (Okl.Cr.1984). In *Eddings* we adopted the definition given to a similar aggravating circumstance by the Florida Supreme Court in *State v. Dixon*, 283 So.2d 1 (Fla.1973):

[W]e feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended. It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accomplished by such additional acts as to set the crime apart from the norm of capital felonies the conscienceless or pitiless crime which is unnecessarily torturous to the victim.

616 P.2d at 1167–68. We have consistently adhered to this definition of "especially heinous, atrocious, or cruel." *See Stafford v. State*, 669 P.2d 285, 299 (Okl.Cr.1983); *Ake v. State*, 663 P.2d at 11; *Jones v. State*, 648 P.2d 1251, 1259 (Okl.Cr.1982).

The appellant argues, however, that the suffering of the victim is the major factor to consider in evaluating this aggravating circumstance, citing *Odum v. State*, 651 P.2d 703 (Okl.Cr.1982). In *Odum*, the victim was shot once in the neck, rendered unconscious in seconds, and died minutes later. We modified the sentence to life imprisonment, stating:

There was no evidence of any physical or mental suffering whatsoever and the manner of killing cannot be said to be at the 'core' of the statutory aggravating circumstance.

*Id.* at 708. Appellant asserts that his victim did not suffer, and, thus, his punishment must be modified to life imprisonment.

We believe appellant's assertion Howell did not suffer is unacceptable. While some of the blows struck with the hammer were sufficient to cause immediate unconsciousness, the medical examiner noted "the least severe of them may not have caused unconsciousness straight away." It is pure speculation by the appellant that his victim did not suffer.

■ Even if we accepted appellant's claim, *Eddings* and subsequent cases make clear that suffering of the victim is not the major factor we consider regarding this aggravating circumstance. As we noted in *Odum*, the "manner of killing" is a relevant consideration, as well as the circumstances surrounding the homicide. *Odum*, *supra*; *Stafford v. State*, 669 P.2d 285, 299 (Okl.Cr.1983). We also have examined the killer's attitude to learn if it was especially pitiless or cold. *Boutwell v. State*, 659 P.2d 322, 329 (Okl.Cr.1983); *Jones v. State*, 648 P.2d 1251, 1259 (Okl.Cr.1982).

■ In this case, the appellant and his companion befriended a stranded motorist, conversed with him, drank beer with him, and spent time in his company. Suddenly, and with no apparent provocation,[5] the appellant felled him with three blows from a ball peen hammer. His companion took a turn beating the victim with the hammer, and both stomped and kicked him with their feet. We find both the circumstances leading up to, and the manner in which the

---

stance", and we have thus rendered this circumstance unconstitutionally overbroad. Brief of Appellant, 76. To the contrary, we believe we have applied this aggravating circumstance in a constitutional manner, and in the manner intended by the Legislature.

**5.** Although the State theorized robbery was the motive, we note that at no time prior to the

killing was robbery discussed by Campbell and appellant; Campbell suggested only that appellant hit Howell with the hammer. We also find it noteworthy that appellant did not recall receiving any money from Campbell, and money was not a primary concern of appellant. We have little trouble finding that this murder was committed without provocation.

homicide was committed, sufficiently atrocious to be at the "core" of the circumstance. *Odum, supra. See Stafford v. State,* 669 P.2d at 299. Moreover, the circumstances of this killing, coupled with appellant's comments to D.A.'s Investigator Mayo, reveal this crime was shockingly pitiless.

### X.

Finally, we observe that 21 O.S. 1981, § 701.13 requires us to consider the appropriateness of the death penalty, regardless of the errors asserted on appeal. In doing so, the Legislature has commanded us to consider:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

2. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in 21 O.S. 1981, § 701.12(4); and,

3. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

We determine that the defendant was afforded a fair trial at both stages of the proceeding, one that was sufficiently free of passion and prejudice so as to leave the death penalty undisturbed. As we noted above, ample evidence supported the single aggravating circumstance alleged and proved by the State.

6. *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984); *Stafford v. State,* 669 P.2d 285 (Okl.Cr.1983); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983); *Ake v. State,* 663 P.2d 1 (Okl.Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1983); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); and, *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *modified* on other grounds, *sub. nom., Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984).

7. *Tobler v. State,* 55 O.B.J. 1789, 688 P.2d 350 (Okl.Cr.1984); *White v. State,* 674 P.2d 31 (Okl. Cr.1983); *Coleman v. State,* 670 P.2d 596 (Okl. Cr.1983); *Hatch v. State,* 662 P.2d 1377 (Okl.Cr. 1983); *Smith v. State,* 659 P.2d 330 (Okl.Cr. 1983), *rev'd,* —— U.S. ——, 104 S.Ct. 324, 78 L.Ed.2d 297 (1983), *on remand,* 55 O.B.A.J. 371

We have also compared this case to those capital cases affirmed,[6] reversed,[7] or modified[8] by this Court on appeal. Our comparison has shown the punishment here is neither excessive or disproportionate, considering the appellant and his crime.

Accordingly, the judgment and sentence is AFFIRMED.

BUSSEY, Presiding Judge, concurring:

I concur that the judgment and sentence should be affirmed for the reason that the record is free of any error which would justify a modification or reversal.

(Okl.Cr.1984) (Unpublished); *Hall v. State,* 650 P.2d 893 (Okl.Cr.1982); *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982); *Cox v. State,* 644 P.2d 1077 (Okl.Cr.1982); *Giddens v. State,* No. F–79–164 (Okl.Cr.Nov. 17, 1981) (Unpublished); *Hager v. State,* 612 P.2d 1369 (Okl.Cr.1980).

8. *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980) as *modified,* 688 P.2d 342 (Okl.Cr.1984); *Morgan v. State,* No. F–79–487 (Okl.Cr.Nov. 14, 1983) (Unpublished); *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983); *Jones v. State,* 660 P.2d 634 (Okl.Cr.1982); *Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Munn v. State,* 658 P.2d 482 (Okl. Cr.1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr. 1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr. 1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr. 1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980).