**Kenneth F. NUCKOLS, Petitioner,**

v.

**Dan M. REYNOLDS, Respondent.**

**No. CIV–86–2602–W.**

United States District Court,
W.D. Oklahoma.

May 6, 1993.

Gary Peterson, Oklahoma City, OK, for Petitioner.

Sandra D. Howard, Asst. U.S. Attorney, Michael C. Turpen, Attorney General, Michael W. Elliott, Asst. Attorney General, Oklahoma City, OK, for Respondent.

WEST, District Judge.

## ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment filed and twice-supplemented by petitioner Kenneth F. Nuckols. Respondent Dan M. Reynolds has submitted argument and authority in opposition to the petitioner's motion and the petitioner has replied. Based upon these submissions, the following undisputed facts and the record, the Court makes its determination.

1. The petitioner was convicted of murder in the first degree in 1983 in the District Court of Pottawatomie County, Oklahoma, and sentenced to death. *State v. Nuckols,* No. CRF–82–273. He is presently incarcerated pursuant to a Judgment and Sentence issued on March 7, 1983.

2. The petitioner pursued a direct appeal of this Judgment and Sentence in the Oklahoma Court of Criminal Appeals. The conviction was affirmed by the state appellate court on October 19, 1984. *Nuckols v. State,* 690 P.2d 463 (Okla.Crim.1984) (*Nuckols I*). The petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court. The petition was denied on April 15, 1985. *Nuckols v. Oklahoma,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

3. The petitioner thereafter filed an Application for Post–Conviction Relief in the District Court of Pottawatomie County, Oklahoma. The application was denied on January 6, 1986. This denial was affirmed by the Oklahoma Court of Criminal Appeals on June 24, 1986. *Nuckols v. State,* No. PC–86–79 (June 24, 1986). The petitioner's Petition for Writ of Certiorari was denied by the Supreme Court on October 20, 1986. *Nuckols v. Oklahoma,* 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986).

4. The petitioner then filed the instant Petition for Writ of Habeas Corpus on November 24, 1986. The Court found two of the petitioner's claims for relief had not been exhausted and on October 25, 1988, directed the petitioner to exhaust his state court remedies.

5. The petitioner filed a second Application for Post–Conviction Relief in the District

Court of Pottawatomie County, Oklahoma. The application was denied and the denial was affirmed by the Oklahoma Court of Criminal Appeals. *Nuckols v. State*, 805 P.2d 672 (Okla.Crim.1991) (*Nuckols II*). The United States Supreme Court denied the petitioner's Petition for Writ of Certiorari on June 3, 1991. *Nuckols v. Oklahoma*, 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991).

6. The victim, Freddie Orville Howell, was struck multiple times with a ball peen hammer, kicked and stomped. James Donald Dibdin, a medical examiner and forensic pathologist employed by the Office of Chief Medical Examiner, performed an autopsy on Mr. Howell, during which he made certain observations.

7. At trial, Dr. Dibdin testified that Mr. Howell

"had head injuries and he had multiple skull fractures, he had injuries to his brain and he had multiple lacerations, which means tears and bruises, to his head. He also had some bruises on his left chest wall, with multiple rib fractures underlying the bruises and he had bruising of his scrotum."

Trial Transcript (February 15, 1983) at p. 60, lines 9–13 [hereinafter "Transcript"].

8. Dr. Dibdin testified that the cause of death was, in his opinion, "an accumulation of blows [to the head]." Transcript at p. 61, line 24.

9. Dr. Dibdin also testified, in response to defense counsel's inquiry about whether the blows Mr. Howell sustained would have produced unconsciousness rather quickly, that he [Dr. Dibdin] did not "really know in which sequence the blows were administered," Transcript at p. 63, lines 16–17, and that some of the blows "were more severe than others and the least severe of them may not have caused unconsciousness straight away, like most of the others might have done." Transcript at p. 63, line 24 to p. 64, line 2.

10. The following questions were then asked by defense counsel and the following answers were given by Dr. Dibdin:

"A. At some point during the proceedings he lost consciousness.

"Q. You can't tell us, of course, what sequence that any particular blows were—

"A. That is it exactly, yes.

"Q. But, some of those blows were, from your observation, severe enough that they would have produced unconsciousness in the decedent rather quickly?

"A. Yes, that is what I think, yes.

"Q. And would that be in a matter of minutes or a matter of seconds?

"A. I think you would be talking less than a minute.

"Q. All right. Do you have any judgment, Doctor, on the basis of your observations as to the length of time that the decedent might have survived?

"A. Well, assuming all of these blows were administered at the same time, and all within a very short period of time, I wouldn't have expected him to have lived much more than five or ten minutes after the last blow was struck."

Transcript at p. 64, lines 4–21.

11. There was *no* medical testimony concerning any pain or suffering experienced by Mr. Howell.

12. The prosecutor also called as a witness, then-Sheriff Ruie Birks, who testified that he recorded a statement by the petitioner on August 21, 1982.

13. In his statement, the petitioner said:

"And then the guy [Mr. Howell] stepped in between me and Greg[1] and I hit him and knocked him down, and knocked him on the ground, and *then he started to get up*, so I hit him again and then Greg started

---

**1.** The evidence produced at trial established that the petitioner and a friend, Greg Campbell, committed the instant crime.

hollering about, 'Keep hitting him.' So I hit him a third time . . . . "

Transcript at p. 74, lines 19–23 (emphasis added).

14. The sole aggravating circumstance alleged by the State at trial was that "[t]he murder was especially heinous, atrocious, or cruel," 21 O.S. § 701.12(4), and the jury, as indicated on the verdict form, found evidence of this circumstance.

15. Mitigating evidence in the form of testimony by the petitioner's father and mother was presented during the penalty phase of the trial. And, the jury was instructed that evidence had been offered as to the following mitigating circumstances: age of the defendant at the time of the crime (22 years) and likelihood of rehabilitation.

16. At the conclusion of the second stage, the state trial court instructed the jury that "the State alleges the [petitioner] should be punished by death, because of the following aggravating circumstance[ ]. (1) The murder was especially heinous, atrocious, or cruel." Supplemental Instructions to Jury No. 2. And further,

"that, in arriving at your determination of punishment, you must first determine whether at the time this crime was committed any one or more of the following aggravating circumstances existed beyond a reasonable doubt:

(1) The murder was especially heinous, atrocious, or cruel."

Supplemental Instructions to Jury No. 4.

17. The jury was further instructed:

"As used in these Instructions, the term 'heinous' means extremely wicked or shockingly evil; 'Atrocious' means outrageously wicked and vile; 'Cruel' means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

"The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse."

Supplemental Instructions to Jury No. 5 [hereinafter Instruction No. 5].

In *Nuckols I*, the Oklahoma Court of Criminal Appeals upheld the jury's finding of this aggravating circumstance after rejecting the petitioner's argument that Mr. Howell did not suffer. 690 P.2d at 472. The state court wrote that

"[w]hile some of the blows struck with the hammer were sufficient to cause immediate unconsciousness, the medical examiner noted 'the least severe of them may not have caused unconsciousness straight away.' It is pure speculation by the [petitioner] that his victim did not suffer."

*Id.*

The state appellate court stated further that even if Mr. Howell did not suffer, "suffering of the victim is not the major factor [this court should] consider regarding this aggravating circumstance." *Id.* The Court also considered relevant to this issue "the 'manner of killing' . . . as well as the circumstances surrounding the homicide," *id.* (citations omitted), and "the killer's attitude . . . ." *Id.* (citations omitted). The state court found that "both the circumstances leading up to, and the manner in which the homicide was committed, sufficiently atrocious to be at the 'core' of [this aggravating] circumstance," *id.* at 472–73 (citations omitted), and that "the circumstances of this killing, coupled with [the petitioner's] comments to [the district attorney's investigator], reveal this crime was shockingly pitiless." *Id.* at 473.

In *Nuckols II*, the Oklahoma Court of Criminal Appeals acknowledged that in *Nuckols I*, it had focused "more on the totality of the circumstances based on the 'circumstances leading up to, and the manner in which the homicide was committed,'" 805 P.2d at 674 (quoting *Nuckols I*, 690 P.2d at 472–73), and had "held that the suffering of the victim was not the sole decisive factor, but was certainly a major factor to be considered." *Id.* The state court opined that while it had, "of necessity, retreated from the totality of the circumstances test, [it had] not withdrawn from [its] consideration . . . the suffering of the victim as a part of the current test nor from consideration . . . the killer's attitude toward his victim." *Id.*

In response to the argument by the petitioner that Oklahoma had not adopted a suf-

ficiently narrow set of guidelines to allow this particular aggravating circumstance to pass constitutional muster, the state court found that its current test was "best understood when measured against the actual instructions given to the sentencer." *Id.* The appellate court found that Instruction No. 5 contemplated a two-step analysis.

> "The jury is told by the second paragraph that they must first find that the 'death of the victim was preceded by torture of the victim or serious physical abuse.' This threshold determination . . . is a constitutionally approved manner of limiting the application of the [heinous, atrocious or cruel] circumstance to only a specific class of crimes."

*Id.* (citations omitted). The state court further stated that it had "consistently applied this test to properly narrow the class of defendants to which this aggravating circumstance can be applied." *Id.* (citations omitted).

The appellate court wrote further that

> "[o]nce this foundational assessment is made, then the jury may apply the definitions given to them in the first paragraph of the instruction to measure whether or not the crime can be considered to have been heinous, atrocious or cruel. The individual criteria set out in the first paragraph, once their application is limited to a

narrow class of crimes, are constitutionally valid."

*Id.* (citation omitted). It wrote further

> "that the application of the actual definitions of heinous, atrocious and cruel only after a determination that the victim had been subjected to serious physical abuse or torture adequately directs the discretion of the sentencer in not only one way but in two different ways. First, the class of crimes to which the death penalty may be applied under this circumstance is limited to those involving torture or serious physical abuse. The test does not stop there, however. If torture or serious physical abuse is found, the sentencer must go beyond these two criteria and judge whether or not the killing is heinous, atrocious or cruel as defined by the first paragraph of the limiting instructions. By requiring this two step analysis, only those murders which truly are heinous, atrocious or cruel will be set apart from 'any other murder.' "

*Id.* at 675 (citation omitted).[2]

The state court found that Dr. Dibdin's testimony regarding the injuries sustained by Mr. Howell clearly demonstrated that this was "a case where the limiting factor of 'serious physical abuse' [was] established," *id.*, and thus, the murder of Mr. Howell fell into that "narrow category of crimes for

---

2. In *Nuckols II,* Vice Presiding Judge Gary L. Lumpkin although concurring in the results took issue with the majority's analysis of this jury instruction. He wrote:

> "[I]t is apparent on the face of [Instruction No. 5] that the analysis is not defendable under close scrutiny. The analysis assumes that a jury has the benefit of more instructions than those actually given and the jury is guided to the second paragraph first. I realize this process might be the process this Court utilizes in analyzing a case of this type, but the instructions do not tell the jury to follow the step by step analysis the opinion proposes. For example, the opinion states '[t]he jury is told by the second paragraph that they must first find that the "death of the victim was preceded by torture of the victim or serious physical abuse." ' However, [Instruction No. 5] does not require the jury to first find torture or serious physical abuse. My concern is that we cannot assume the jury follows the same process we might follow as they apply the instructions as they are actually given. . . .

> It is clear that [Instruction No. 5] contemplates a two-step analysis. The first paragraph sets forth specific definitions for the terms of this aggravating circumstance. By looking to this paragraph first, the jury is informed of the meanings to be placed upon the words heinous, atrocious and cruel within the context of the law. These definitions provide a foundation for the jury to then consider the second paragraph. The second paragraph directs the jury to limit the application of the above defined terms to murders where there is torture or serious physical abuse of the victim. It is this second paragraph which objectively guides the jury's consideration of this aggravating circumstance. . . . This procedure of applying the specifically defined terms, as set forth in the first paragraph, to the limited class of crimes, as set forth in the second paragraph, is constitutionally valid." 805 P.2d at 676–77 (citations omitted) (Lumpkin, V.P.J., concurring in result).

which the death penalty may be considered." *Id.* at 676.

The state court then applied the definitions of heinous, atrocious and cruel to the facts and found first that such facts "indicated that the commission of this crime was 'shockingly pitiless.'" *Id.* (quoting *Nuckols I,* 690 P.2d at 473).

"[The petitioner] went hunting for a person to kill, found such a victim and then killed him. It is difficult to conceive of a more 'pitiless' crime. There was no provocation by the victim who was killed purely for the enjoyment of the murderers."

*Id.* (citations omitted).

The state court found further that the evidence supported "a finding that the victim in this case was subjected to a high degree of physical pain before his death." *Id.* This finding was grounded on the fact that the petitioner

> "told police officers that after the first blow to his [Mr. Howell's] head, Howell tried to get up. While the medical examiner could not state with certainty that Howell was still conscious, he did state that unconsciousness would not necessarily occur immediately. Under the circumstances presented at the time, Petitioner felt compelled to strike Howell a number more times to ensure death. We find that this is sufficient evidence to support a finding of physical suffering by the victim."

*Id.*

The appellate court concluded its opinion in *Nuckols II* by stating that because it had "identified two different, independent grounds which would support the jury's determination that the murder committed by petitioner was 'especially heinous, atrocious, or cruel,'" *id.,* the petitioner was not entitled to any post-conviction relief.

In his Motion for Partial Summary Judgment now pending before this Court, the petitioner has argued that he is entitled to a declaration that the sentence of death imposed against him is invalid

(1) because he was denied rights guaranteed under the eighth and fourteenth amendments to the United States Constitution since the "heinous, atrocious,

or cruel" aggravating circumstance has been arbitrary interpreted and vaguely defined by the Oklahoma Court of Criminal Appeals;

(2) because he has been denied rights guaranteed under the sixth, eighth and fourteenth amendments to the United States Constitution since he has been denied fair notice of the meaning of this aggravating circumstance at all stages of his case; and

(3) because he has been denied rights guaranteed under the eighth and fourteenth amendments to. the United States Constitution since the evidence offered at trial was insufficient to support a finding that the murder was especially heinous, atrocious or cruel.

In connection with the first ground, the petitioner has argued that the jury instructions did not adequately narrow the scope of the aggravating circumstance. The terms "heinous," "atrocious," and "cruel" were defined by the state court judge in this case the same way these terms were defined in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). These definitions have been held constitutionally insufficient. *Id.* Thus, the instant aggravating circumstance cannot stand unless some other factor is present that distinguishes this case from *Cartwright.*

■ The factor the Oklahoma Court of Criminal Appeals found to be distinguishing and upon which the respondent has relied is the existence in this case of the second paragraph in Instruction No. 5. As indicated, that paragraph reads:

> "The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse."

Instruction No. 5.

> "[C]apital punishment doctrine is rooted in the principle that '[t]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be.. wantonly and freakishly imposed.'

*Gregg v. Georgia,* 428 U.S. 153, 188 [96 S.Ct. 2909, 2932, 49 L.Ed.2d 859] (1976) (joint opinion of Stewart, Powell, and Stevens, J.J.) (quoting *Furman v. Georgia,* 408 U.S. 238, 310 [92 S.Ct. 2726, 2762, 33 L.Ed.2d 346] (1972) (Stewart, J., concurring)); *see also Furman,* [408 U.S.] at 313 [92 S.Ct. at 2764] (White, J., concurring) (invalidating capital punishment statute where 'there is no meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not'). Accordingly, 'where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.' *Gregg,* [428 U.S.] at 189 [96 S.Ct. at 2932].

This principle requires a State to " 'channel the sentencer's discretion' by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " *Godfrey,* [446 U.S. 420, 428, 100 S.Ct. 1759, 1765, 100 S.Ct. 1759 (1980)] (footnotes omitted). A State's definitions of its aggravating circumstances—those circumstances that make a criminal defendant " 'eligible' for the death penalty—therefore play a significant role in channeling the sentencer's discretion."

*Lewis v. Jeffers,* 497 U.S. 764, 774, 110 S.Ct. 3092, 3099, 111 L.Ed.2d 606 (1990).

Upon review of Instruction No. 5 in its entirety, the Court finds a jury, after consideration of Instruction No. 5, is sufficiently enabled "to make a principled distinction between those who deserve the death penalty and those who do not." *Id.* at 776, 110 S.Ct. at 3099 (citations omitted).[3] Instruction No.

5, as a whole, genuinely narrows the class of persons "eligible" in Oklahoma for the death penalty and provides reasonable justification for the imposition by a jury of such a sentence on a defendant. Accordingly, the Court finds that the petitioner's rights under the eighth and fourteenth amendments have not been violated as argued in Proposition I of his Motion for Partial Summary Judgment.[4]

The more difficult question in this case is that posed by the petitioner in Proposition III[5] of his Motion for Summary Judgment:

Does the evidence in this case support a finding that the murder was "especially heinous, atrocious or cruel"?

In answering this question, the Court must apply the "rational factfinder" standard established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *E.g., Lewis,* 497 U.S. at 781–84, 110 S.Ct. at 3102–04. This standard requires this Court to ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the existence of this aggravating circumstance; that is to say, whether a rational factfinder, who is permitted to resolve conflicting testimony, to weigh evidence and to draw reasonable inferences therefrom, could have found that Mr. Howell's death was preceded by "serious physical abuse" and thus, was a crime to which this particular aggravating circumstance was directed.

The term "serious physical abuse" is interpreted by the Oklahoma Court of Criminal Appeals to require proof of conscious physical suffering. *Stafford v. State,* 832 P.2d 20, 23 (Okla.Crim.1992) (quoting *Battenfield v. State,* 816 P.2d 555, 565 (Okla.Crim.1991)) ("Absent evidence of conscious physical suffering of the victim prior to death, the required torture or serious physical abuse stan-

---

3. This Court is somewhat concerned by the state appellate court's determination that the jury would be required to read the paragraphs in Instruction No. 5 in reverse order. The instruction, when read as a whole, sufficiently defines and narrows this aggravating circumstance and provides a jury with an objective standard to make a decision regarding a defendant's sentence.

4. To the extent the Court's Order of October 25, 1988, is inconsistent with the Court's Order issued this date, the earlier Order is vacated.

5. Having determined that the argument advanced in Proposition III of the Motion for Partial Summary Judgment is dispositive, the Court has not addressed the argument pertaining to notice advanced in Proposition II.

dard is not met."); *e.g., Stouffer v. State,* 742 P.2d 562, 564 (Okla.Crim.1987) (citing *Odum v. State,* 651 P.2d 703 (Okla.Crim.1982)) (in absence of evidence of physical or mental suffering, aggravating circumstance not supportable). In *Crawford v. State,* 840 P.2d 627 (Okla.Crim.1992), after finding no evidence had been presented by either the State or defense counsel as to the level of suffering the decedent experienced or the time the decedent lost consciousness, the state appellate court concluded that "[a] record so bereft of evidence leads only to speculation and not to rational drawing of reasonable inferences." *Id.* at 641. The state court determined that there was an insufficient evidentiary basis upon which a reasonable trier of fact could have found the requisite serious physical abuse to support the "especially heinous, atrocious, or cruel" aggravating circumstance. *Id.*

■ The evidence [6] in the instant case, when viewed in the light most favorable to the State, shows only that Mr. Howell "started to get up" after being struck once from behind by the petitioner and that he did not rise again. No evidence was presented pertaining to the level of suffering or pain Mr. Howell experienced prior to his death and Dr. Dibdin could only speculate as to when Mr. Howell lost consciousness. Likewise, there was no evidence by the State concerning any defensive wounds sustained by Mr. Howell. Because such evidence does not support a finding of conscious physical suffering, this Court is constrained 'to conclude that the finding of serious physical abuse by the jury is not rationally supported by the evidence.' Such conclusion requires the petitioner's death sentence be set aside and the petitioner be resentenced.[7]

Accordingly, the Court finds that the petitioner is entitled to the relief he has requested and that his Motion for Partial Summary Judgment, as supplemented, should be and is

hereby GRANTED.[8] The Court finds further that judgment shall issue forthwith in accordance with Rule 54(b), F.R.Civ.P., inasmuch as there is no just reason for delay.

---

6. The State incorporated the first stage evidence into the second stage and did not present any additional evidence.

7. As stated, the "especially heinous, atrocious, or cruel" aggravating circumstance was the sole aggravating circumstance charged. In Oklahoma, absent a valid aggravating circumstance,

the death penalty cannot be imposed. 21 O.S. § 701.11.

8. Resolution of all remaining issues raised by the petitioner in his Petition for Writ of Habeas Corpus, as amended, is deferred pending resentencing, since such issues may become moot.